In the Matter of the WELFARE
OF T.C.J.

No. A04–202.

Court of Appeals of Minnesota.

Dec. 14, 2004.

Petition for Review Dismissed
Jan. 26, 2005.

Leonardo Castro, Fourth District Chief Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for appellant TCJ.

Mike Hatch, Attorney General, St. Paul, MN and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent State of Minnesota.

Considered and decided by LANSING, Presiding Judge; TOUSSAINT, Chief Judge; and CRIPPEN, Judge.*

## OPINION

LANSING, Judge.

The district court denied certification of TCJ's assault charges and, following designation as an extended-juvenile-jurisdiction (EJJ) prosecution, a jury found TCJ guilty of third-degree assault and not guilty of first-degree assault. On appeal from the third-degree assault conviction, TCJ challenges the jury composition, evidentiary rulings, jury instructions, sufficiency of the

evidence, and that part of his disposition that stays an adult sentence. We affirm the district court's rulings and instructions that underlie TCJ's adjudication but, to comport with constitutional requirements, modify the disposition to vacate the stayed adult sentence.

## FACTS

TCJ's assault charges stem from a confrontation between him and a teacher near Park Center High School. TCJ, a seventeen-year-old former student, visited the school with a friend, JH, who was seeking enrollment materials. When TCJ and JH entered the school through a side entrance to the gymnasium, a member of the faculty recognized TCJ and knew that he was not currently a student. The teacher ordered them to leave the school grounds.

The teacher saw TCJ and JH on the school grounds several times that day and each time told them to leave. TCJ and JH failed to comply, and after a final response that the teacher characterized as insubordinate and disrespectful, they suddenly fled through a set of doors, which the teacher stated was off limits to students. The teacher, suspecting wrongdoing, pursued them.

When he caught up with them, they were off school property, and the teacher told them that they must return to the school to deal with the problem "[t]he easy way or the hard way." He then grabbed JH by the shirt. TCJ testified at trial that the teacher mistook JH for a student at the school and repeatedly referred to JH by the wrong name. JH spun from the teacher's grip and out of the shirt, then snatched it away from the teacher, who

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

testified that he was struck across the face with the garment and pushed against a nearby car.

The teacher testified that JH began to choke him, and the teacher, who taught self-defense at the high school, countered by grabbing JH's hands. TCJ testified that the teacher grabbed JH by the throat. According to the teacher, TCJ punched him on the left side of his head, and when he moved to resist, JH began to hit him on the other side of his head. TCJ admitted to hitting the teacher in the face to get him to let go, but he claimed that another student who joined the fray also punched the teacher. The teacher sustained multiple jaw fractures, bruises, and abrasions, and lost several teeth. He testified that, despite his knowledge of self-defense techniques, he did not retaliate. TCJ testified that, despite JH's being choked, neither he nor JH sustained injuries from the altercation. Several other witnesses corroborated aspects of the testimony of each of the principal participants.

TCJ's age and the gravity of the first-degree-assault charge resulted in a presumptive certification to the district court. The district court determined that TCJ had presented evidence that overcame the presumption and designated the proceeding an EJJ prosecution. The jury acquitted TCJ of first-degree assault but found him guilty of third-degree assault. TCJ appeals both the conviction and the sentence.

### ISSUES

I. Did the district court err in allocating or permitting peremptory challenges in the composition of the jury?

II. Did the district court abuse its discretion and deny TCJ a fair trial by excluding evidence of state policies and school policies and records?

III. Did the jury instructions violate TCJ's right to due process and a fair trial?

IV. Is the evidence sufficient to support TCJ's conviction for third-degree assault?

V. Did the district court err by sentencing TCJ to a stayed adult sentence?

### ANALYSIS

#### I

■ TCJ presents two arguments on the composition of the jury. First, he asserts that the district court abused its discretion by improperly dividing the peremptory challenges to the venire between TCJ and his co-defendant. Second, he asserts that the district court erred in allowing the state to use a peremptory challenge to strike the only African-American member of the venire.

■ A defendant's right to peremptory challenges is necessary to ensure the impartiality of the trial process, and denial of that right is reversible error regardless of whether the denial was prejudicial. *State v. Reiners*, 644 N.W.2d 118, 126 (Minn.App.2002) (citing *Lewis v. United States*, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892)), *affd.* 664 N.W.2d 826 (Minn.2003). We review de novo the district court's interpretation of the criminal rules of procedure. *State v. Nerz*, 587 N.W.2d 23, 24–25 (Minn.1998).

A criminal defendant in Minnesota is entitled to five peremptory challenges when selecting the trial jury for an offense not punishable by life imprisonment. Minn. R.Crim. P. 26.02, subd. 6. But "[i]f there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to

be exercised separately or jointly, and in that event the states peremptory challenges shall be correspondingly increased." *Id.* The district court offered TCJ and his codefendant the choice of three peremptory challenges each or five to be exercised jointly.

■ TCJ argues that the courts ruling denied him due process and contends that each defendant should have been granted five challenges. TCJ's position is inconsistent with precedent stating that "peremptory challenges belong to a 'side,' not an individual." *State v. Greenleaf,* 591 N.W.2d 488, 501 n. 6 (Minn.1999). And the rules of statutory construction require that courts "give a reasonable and sensible construction to criminal statutes." *State v. Murphy,* 545 N.W.2d 909, 916 (1996). Under TCJ's interpretation, a "side" would be entitled to more peremptory challenges in a joint trial than in an individual trial. While the district court may have had discretion to grant the requested challenges, we find no reasonable basis for an interpretation of the rules that required it to do so. Therefore, we reject TCJ's claim that the court's failure to grant him five challenges was an abuse of discretion.

■ TCJ's argument on the state's use of its peremptory challenge to strike the only African–American venireperson raises an issue on a *Batson* ruling, which we review for clear error. *State v. McDonough,* 631 N.W.2d 373, 385 (Minn.2001) (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). Whether racial discrimination in the exercise of a peremptory challenge has been shown is "an essentially factual determination" dependent largely on evaluations of credibility. *State v. James,* 520 N.W.2d 399, 403 (Minn.1994) (quotation omitted). The district court determines whether a peremptory strike is improper by conducting a three-step process in which: (1) the defendant must make a prima facie case that the prosecution's challenge was racially motivated; (2) if the prima facie case is made, the prosecution bears the burden of articulating a race-neutral explanation for the strike; and (3) the district court determines whether the defendant has proved purposeful discrimination by the prosecution. *Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723–24.

The district court found that TCJ and his codefendant had presented a prima facie case of racial motivation. After extensively questioning counsel, the district court concluded that several of the reasons proffered by the state—including the claim by the potential juror that he could not be objective toward police testimony and that police "picked on good kids" and "let the bad ones do what they will"—were race neutral, not pretextual. The district court properly analyzed the state's peremptory challenge using the steps outlined in *Batson* and found no discrimination, and we discern no clear error.

## II

■ TCJ's evidentiary challenges relate to the district court's refusal to allow evidence of state and school policies on the use of force by a teacher and a disciplinary report on the student with whom the teacher had allegedly confused JH. Rulings on evidence are committed to the district court's sound judgment and will not be reversed on appeal absent an abuse of discretion. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003). The appellant has the burden of establishing that the district court abused its discretion and thereby prejudiced the outcome of the case. *Id.* TCJ contends that the exclusion of this evidence by the district court prevented him from presenting his theory of self-defense because the teacher was acting beyond the scope of his authority and was

the first aggressor in the assault. The court, after a comprehensive discussion on the record, determined that the evidence on policy and school records was not relevant.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Minn. R. Evid. 401. TCJ's attorney argued that the previous disciplinary report was relevant to show "a pertinent trait of character" of the teacher. This trait, according to the attorney's argument, would trigger a heightened sense of irritation with an individual who was brazenly disobeying him after a previous incident. The court rejected this theory, stating that TCJ had not yet shown "that the [teacher] believed that he was chasing" the previously disciplined student, and the report indicated "no use of force or inappropriate behavior" by the teacher in the previous incident.

Lack of relevance was also the district court's basis for excluding evidence of state and school policies on the use of force. The court identified the essential issue as the actions occurring at the point of conflict and whether those actions were in self-defense. TCJ's attorney renewed the attempt to introduce this evidence in response to the state's attempt to prove that the teacher had acted within his authority. The district court again rejected the evidence, stating that the school policies did not specifically permit or prohibit any of the teacher's conduct that was in evidence.

School policies may have had some relevance to an assessment of the teacher's motive in pursuing TCJ and JH and his attempt to bring them back to the school. But the district court extensively considered on the record whether that assessment was of consequence to the charged offenses and concluded that it was not. Evidence that is "marginally relevant or poses an undue risk of ... confusion of the issues" may be excluded in the court's discretion. *State v. Quick,* 659 N.W.2d 701, 713 (Minn.2003) (quoting *Crane v. Kentucky,* 476 U.S. 683, 689–90, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986)). The record indicates that the district court properly and thoroughly considered the relevance and utility of the evidence in question, and we find no abuse of discretion.

**III**

District courts are allowed "considerable latitude" in the selection of language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). Instructions must be reviewed in their entirety to determine whether the district court fairly and adequately explained the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). The focus of the analysis on appeal is whether the refusal resulted in error. *State v. Kuhnau,* 622 N.W.2d 552, 555 (Minn.2001). Failure to request specific jury instructions or to object to the instructions ordinarily waives the right to appeal unless the instructions contain plain error affecting substantial rights. *State v. Cross,* 577 N.W.2d 721, 726 (Minn.1998).

TCJ asserts multiple errors in the district court's instructions to the jury: that the court's instruction on aiding and abetting the assault amounted to an amendment of the complaint against which he was unable to defend; that the district court failed to instruct the jury on his theory that the intervening student caused the great or substantial bodily harm of which TCJ was accused; that he was entitled to a specific instruction on defense of another; that he was entitled to an in-

struction on the lesser included offense of fifth-degree assault; that he was entitled to a jury instruction on the theory that the teacher was acting beyond his authority; and that he was entitled to a "reasonableness" instruction tailored to his age and level of maturity.

We have reviewed these arguments under the applicable standards and can discern no error. The district court diligently managed the solicitation and provision of jury instructions, and the charge as a whole conveyed a clear and correct understanding of the law of the case. *See Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn. 1986) (specifying that charge taken in its entirety should correctly state the law and not assume existence of facts in controversy). The district court did not abuse its discretion in its instructions to the jury.

## IV

■ In determining whether the evidence is sufficient to support a conviction, we conduct a careful review of the record to ascertain whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow a jury to reach the verdict being appealed. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We must assume that the jury believed the prosecution's witnesses and rejected contrary evidence, particularly when resolution of the issues depends mainly on conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980).

■ TCJ asserts that the verdict is not factually supported because the evidence did not show that his blows caused the teacher's broken jaw and it was instead more likely that the student who intervened caused the injury. He further asserts that the record does not support the conclusion that he acted in concert with the intervening student. Yet TCJ testified that he struck the teacher multiple times,

and that he fled together with JH and the intervening student, whom he characterized as a friend. Several witnesses corroborated the state's account, testifying that two or three assailants attacked the teacher. Furthermore, TCJ testified that the intervening student hit the teacher twice on the left side of the face only, but the teacher suffered fractures on both sides of his jaw. Clearly, the record supports an inference that TCJ's use of force against the teacher caused substantial bodily harm.

TCJ also argues that his claim that he was protecting his friend is "a complete defense" to the charge. This argument relies largely on his statement that "[t]here is no question from the testimony that [the teacher] was the first aggressor" and that the teacher first assaulted JH. This argument mischaracterizes the record because the testimony of the teacher did not include an admission that he assaulted TCJ. The facts indisputably show that the teacher initiated contact with JH, but a number of witnesses testified that the teacher did not fight back.

Because of the abundance of factual support in the record for the jury's verdict, we reject TCJ's claim that the evidence is insufficient as a matter of law to support a verdict of guilty beyond a reasonable doubt.

## V

Finally, TCJ challenges the district court's decision to sentence him under the extended-juvenile-jurisdiction procedure in Minn.Stat. § 260B.130, subd. 4(a) (2002), which requires the imposition of a stayed adult criminal sentence in addition to a juvenile disposition under Minn.Stat. § 260B.198 (2002). TCJ maintains that he should have been sentenced only to a juvenile disposition as provided by section 260B.130, subdivision 4(b). But that provi-

sion is limited to "a child prosecuted as an extended jurisdiction juvenile after designation *by the prosecutor*" who is convicted of an offense that would not, on its own, have justified an EJJ prosecution. (Emphasis added.) As the state indicated in its brief, TCJ's assault proceedings were designated as extended jurisdiction juvenile *by the juvenile court* after the prosecution unsuccessfully sought his certification to district court as an adult under Minn.Stat. § 260B.125 (2002). TCJ argues that the district court's application of the EJJ statute violated his right to equal protection under the law. While TCJ did not fully articulate this constitutional challenge at trial, we may consider issues not addressed by the district court when the interests of justice so require. *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn. 1989).

We begin by reviewing the procedural aspects of this case that led to the prosecution of TCJ under the EJJ statute. In its delinquency petition, the state charged TCJ with two counts of assault: third-degree assault in violation of Minn.Stat. § 609.223, subd. 1 (2002), and first-degree assault in violation of Minn.Stat. § 609.221, subd. 1 (2002). Because the first-degree-assault charge satisfied the presumptive-certification requirement of the adult certification statute, Minn.Stat. § 260B.125, subd. 3(2), as "an offense that would result in a presumptive commitment to prison under the sentencing guidelines and applicable statutes," the state moved for district court "certification" to try TCJ as an adult. Following an order establishing probable cause for the presumptive offense and subsequent extensive briefing and a hearing, the juvenile court found that TCJ had overcome the presumption of adult certification and granted TCJ's motion that the proceeding "be designated an extended juvenile jurisdiction case." *See also* Minn. R. Juv. Delinq. P. 18.06, subd. 5 ("If the juvenile court does not order certification in a presumptive certification case, the court shall designate the proceeding an extended jurisdiction juvenile prosecution."); Minn.Stat. § 260B.125, subd. 8 (stating same).

TCJ's case proceeded under Minn.Stat. § 260B.130, which governs EJJ prosecutions. A decision to prosecute a juvenile in the district court under the laws and procedures controlling adult criminal violations is termed a "certification"; the equivalent process under the EJJ statute is termed "designation." Minn.Stat. § 260B.130, subd. 1. Although TCJ's case defaulted to EJJ upon the district court's designation, the EJJ process can also be instigated by the prosecutor under the same standard as the adult certification process if "the child is alleged to have committed an offense for which the sentencing guidelines and applicable statutes presume a commitment to prison." *Id.,* subd. 1(2). Unlike the adult certification statute, under which the prosecution proceeds "as if the jurisdiction of the juvenile court had never attached," Minn.Stat. § 260B.125, subd. 7, the EJJ statute contains a provision to distinguish between those offenses that justify the extended jurisdiction and other offenses with which the defendant may have been charged.

Subdivision 4 of the EJJ statute governs the disposition of offenses. Subpart (a) of the subdivision requires the court to impose a bifurcated sentence following a guilty plea or finding of guilt: first, the child is given a juvenile disposition under Minn.Stat. § 260B.198; and second, the child receives "an adult criminal sentence, the execution of which shall be stayed on the condition that the offender not violate the provisions of the disposition order and not commit a new offense." Minn.Stat. § 260B.130, subd. 4(a). But subpart (b) qualifies the second part of the bifurcated

process: if the child is convicted as an EJJ of an offense for which the sentencing guidelines and applicable statutes *do not* presume a commitment to prison, then the court shall order only the juvenile disposition.

The provision is sensible and fair because it recognizes that the absence of guilt for the offense that increased the degree of seriousness in the child's prosecution should correspondingly permit the punishment for the nontriggering offenses to revert to the juvenile system. That result would apply to all EJJ prosecutions but for the phrase "after designation by the prosecutor in the delinquency petition" in subpart (b). We read this language to require a disparately more severe sentence for every EJJ conviction that results from the juvenile court's rejection of adult certification. In other words, under a literal reading of the EJJ statute, if TCJ's trial and conviction had followed a decision by the state to forego the adult-certification process and a successful motion to designate his offense as an EJJ proceeding, he would only be subject to a juvenile disposition for the third-degree assault conviction. But because the state chose a more stringent approach of seeking adult certification—a decision entirely within the state's discretion and a choice which the court rejected—the statute mandates a stayed adult sentence for the third-degree assault *after the very same trial.* We find this result inconsistent with the protections afforded TCJ under the United States and Minnesota Constitutions.

■ The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, "No [s]tate shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Article I, Section 2, of the Minnesota Constitution provides, "[n]o member of this [s]tate shall be disenfran-

chised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers." While all similarly situated persons shall be treated alike, "only invidious discrimination is deemed constitutionally offensive." *Scott v. Minneapolis Police Relief Ass'n,* 615 N.W.2d 66, 74 (Minn.2000) (quotation omitted).

■ Minnesota law presumes that all statutes are constitutional and should be declared unconstitutional only if it is established beyond a reasonable doubt that they violate a constitutional provision. *Id.* at 73. Unless a constitutional challenge to the statute involves a suspect classification or a fundamental right, we review the challenge using a rational-basis standard under both the state and federal constitutions, and the statute will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Id.* at 74. TCJ argues summarily that the imposition of a stayed adult sentence has deprived him of his liberty, a fundamental right, but he provides no legal support for this argument. We are not convinced that a fundamental right to liberty is affected when a stayed sentence is imposed concurrently with a juvenile sentence that already requires TCJ's commitment to a juvenile facility, and we thus examine the statute under the rational-basis standard. *Cf. Taylor v. Lieffort,* 568 N.W.2d 456, 458 (Minn.App. 1997) (stating that alteration of a discretionary release date does not constitute impairment of a protected liberty interest).

We are guided in this equal-protection analysis by the Minnesota Supreme Court's recent holding that the classification imposed by another subdivision of the EJJ statute could not withstand a rational-basis test. In *State v. Garcia,* 683 N.W.2d 294 (Minn.2004), the court applied the following test:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Id.* at 299 (quoting *State v. Russell,* 477 N.W.2d 886, 888 (Minn.1991)). TCJ argues that separate sentencing of "identically situated juveniles" is a manifestly arbitrary distinction which this court must find unconstitutional.

■■■ We agree. We perceive no rational basis linking this classification to the underlying purpose of the statute, which provides the juvenile courts with a means to retain jurisdiction to try juveniles for adult crimes and thus serve public safety. *See* Minn.Stat. § 260B.130, subd. 2 (requiring a showing of "clear and convincing evidence that designating the proceeding an extended jurisdiction juvenile prosecution serves public safety"). There is no evident connection between: (1) juveniles who were originally subjected to the adult certification process but who are not convicted of the presumptive offense, and (2) a sentencing provision that subjects them to harsher punishment than others not convicted of a presumptive offense simply because the first group arrived in an EJJ court through the adult-certification route. We are convinced that, as written, the statute inevitably overweights the prosecutor's discretion as an influence on the juvenile's sentence. This result, while clearly

in violation of a juvenile's right to equal protection under the law, appears to have due process implications as well. If prosecutorial empowerment was the legislature's purpose in drafting subdivision 4 of the EJJ statute, it is not a purpose which "the state can legitimately attempt to achieve." Therefore, we hold that Minn. Stat. § 260B.130, subd. 4(b) is unconstitutional, and we vacate that part of TCJ's disposition that stays an adult sentence.

## DECISION

We affirm the district court's judgment on the challenges to TCJ's conviction of third-degree assault. But we hold that the imposition of a stayed adult sentence on a juvenile defendant violates his right to equal protection, and we modify the disposition to vacate the stayed adult sentence.

**Affirmed as modified.**