In the Matter of the WELFARE OF D.D.R.

Nos. A05–658, A05–752.

Court of Appeals of Minnesota.

May 16, 2006.

Leonardo Castro, Chief Fourth District Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for appellant D.D.R.

Michael Hatch, State Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN for respondent State of Minnesota.

Considered and decided by TOUSSAINT, Chief Judge; LANSING, Judge; and RANDALL, Judge.

## OPINION

RANDALL, Judge.

D.D.R. was charged with first- and third-degree criminal sexual conduct and designated an extended-jurisdiction juvenile (EJJ). A jury convicted D.D.R. of third-degree criminal sexual conduct. The court imposed a juvenile disposition, and the state appealed the dispositional order. D.D.R. then moved to dismiss the state's appeal under Minn. R. Juv. Delinq. P. 21.04, subd. 1, and filed his own appeal. This court denied the motion for dismissal and consolidated the appeals. D.D.R. argues that (1) the state's multiple discovery violations entitle him to a new trial; (2) the prosecutor committed prejudicial misconduct; (3) the court's evidentiary rulings denied him a fair trial; (4) the jury instructions violated his right to due process and a fair trial; (5) the cumulative effect of the court's errors denied him a fair trial and requires that his conviction be reversed; and (6) the evidence is insufficient to support his conviction. In addition to appellant's arguments, the state also appeals from the district court's findings and rulings, arguing that the district court erred by refusing to impose a stayed adult sentence and failing to rank appellant's offense. Reverse and remanded.

## FACTS

D.D.R., appellant, was charged with first- and third-degree criminal sexual conduct and designated an extended-jurisdiction juvenile (EJJ). A jury convicted D.D.R. of third-degree criminal sexual conduct.

J.B. alleged she was raped by appellant, a juvenile. At trial, J.B. testified that prior to playing basketball she walked alone to the local library. On her way home from the library, she saw appellant at the corner bus stop near her home. J.B. testified that she "kind of" knew appellant from previous occasions at the local park while playing basketball. Appellant asked J.B. if she wanted to play basketball. J.B testified that she received permission to go to the park and that she and appellant walked to the park. After briefly staying at the park, J.B. left alone to walk home while appellant remained at the park. As she walked home on the sidewalk, J.B. testified that appellant approached her from the rear of his house and asked her if she wanted to have sex and smoke marijuana. J.B. told appellant "No" and testified that he then grabbed her. After grabbing J.B., appellant picked her up and carried her to the garage of his house. J.B. testified that appellant first entered the garage through a hole in the wall and next, while holding her hand, pulled her through the hole into the garage. Once inside the garage, J.B. and appellant sat next to each other on a couch. While on the couch, appellant did not hold or touch J.B. Appellant then instructed J.B. to stand up and pull down her pants. J.B. complied, appellant stood up, approached J.B. from behind, and J.B. claims she was anally penetrated.

After the assault, in a telephone conversation with a friend, J.B. told her friend that she had been raped by appellant. J.B. explained that she had gone to the local park to play basketball with appellant and after playing basketball, appellant raped her on her way home. J.B. next telephoned her mother. Police eventually responded and J.B. was taken to the hospital for a physical examination.

The day after the assault, Sergeant James Spencer interviewed J.B. Spencer testified at trial that J.B. told him that she and appellant had gone to the library together, left the library together, dropped items off at J.B.'s house, and proceeded to the park to play basketball. Spencer testified that J.B. told him appellant left the

park before she did and that the assault happened as she walked home.

J.B.'s mother testified at trial. She testified that it was only during J.B.'s testimony that she learned that J.B. had been at the library on the morning before her assault and walked to the park with appellant. J.B. testified during her examination that she did not tell her mother these facts because she was afraid she would be punished.

Appellant was initially charged with first-degree criminal sexual conduct. The state moved the court to designate appellant under the court's extended juvenile jurisdiction (EJJ). Appellant opposed the motion. After a four day trial, the court designated appellant under the court's EJJ. During the EJJ trial, respondent amended its complaint, adding a count of third-degree criminal sexual conduct.

A jury found appellant not guilty of first-degree criminal sexual conduct but guilty of third-degree criminal sexual conduct, an offense that can be committed only by a juvenile. As a result of his conviction, appellant was placed on juvenile probation and ordered to adhere to specific conditions. This appeal followed.

Appellant alleges that state committed various discovery violations and that the district court made several prejudicial errors during the proceedings. First, appellant objected to the admission of evidence collected from J.B.'s clothing, arguing that the evidence had been sent for analysis only in late January 2005, five months after the assault. Appellant argued that he demanded disclosure of the evidence soon after the assault. The district court found no discovery violations. Second, after J.B. testified, appellant argued that her testimony showed that J.B. admittedly lied to the police regarding the facts of the assault. Appellant moved for a mistrial reasoning that the state knew of the inconsistency of J.B.'s testimony and failed to disclose exculpatory evidence. The district court denied the motion. Third, appellant moved the district court to allow him to use the video recording of J.B.'s interview with police as impeachment evidence but the motion was denied. Fourth, appellant moved in limine to preclude the prosecutor from asking the forensic scientist whether 15–year–olds can ejaculate and what she had found in all her other sexual assault cases. Appellant argued that this was beyond the scope of discovery. The district court denied appellant's motion. Next, appellant elected not to testify and requested that a jury instruction be read informing the jury of his right not to testify. The district court denied his request. Finally, appellant objected to several remarks made during the prosecutor's closing argument. Although the district court found the remarks to be inappropriate, it stated that it would give the jury a curative instruction. The district court then failed to give the promised curative instruction.

On appeal, appellant maintains that the district court's evidentiary rulings and jury instructions, combined with the state's discovery violations and prosecutor's misconduct during her closing argument, denied him a fair trial. He also argues that the evidence was insufficient to justify the jury's verdict. He seeks reversal and dismissal of his conviction, or in the alternative, a new trial.

**ISSUES**

I. Did individual violations of discovery rules, prosecutorial misconduct, and erroneous jury instructions occur, warranting a new trial?

II. Was there a cumulative effect of errors prejudicing appellant that warrants a new trial?

III. Was the evidence sufficient to support the jury's verdict?

IV. Did the juvenile court err when it refused to impose a stayed adult sentence?

## DECISION

### I.

Appellant argues that the state committed various discovery violations, prosecutorial misconduct, and that he was prejudiced by erroneous evidentiary rulings by the district court.

### a. Discovery Violations

■ Once a discovery violation has occurred, the district court is particularly suited to determine the appropriate remedy and has wide discretion in deciding whether to impose sanctions. *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn.1979). In exercising its discretion, the district court should consider all relevant factors, including the extent to which the violation prejudiced the opposing party. *See State v. Smith*, 367 N.W.2d 497, 502 (Minn.1985). Absent a clear abuse of discretion, a reviewing court will not overturn the district court's decision. *Lindsey*, 284 N.W.2d at 373.

*DNA Test Results*

■ Appellant argues that the district court erred when it denied his motion to suppress the results of the DNA testing because the prosecutor failed to timely provide him with the results. Initial DNA testing was completed just three weeks before appellant's jury trial, which showed no presence of appellant's DNA on J.B.'s clothing. The state planned to ask for a continuance so that additional DNA testing could be performed on the clothes. The district court ruled "absolutely unequivocally" that any evidence as a result of testing conducted on J.B.'s clothing was inadmissible in the state's case in chief. However, the court declined to rule on whether the evidence would be allowed on rebuttal.

We conclude that the district court did not abuse its discretion by finding there was no discovery violation. The state never introduced the challenged evidence during trial; it was appellant who introduced the test results into evidence.

*Prosecutor Notes*

■ Appellant argues that under Minn. R.Crim. P. 9.03, subd. 2, the prosecutor was required to promptly disclose notes of her conversation with J.B. He argues that the state, without notice to him, put the notes before the jury during its examination of J.B.

J.B. testified that she never told her mother about going to the park with appellant. Appellant argues that the state was aware of this testimony prior to trial as a result of interviews with J.B. and that the information was available only in notes taken as result of the interview. Therefore, appellant argues the state was obligated to disclose the information as exculpatory evidence. The prosecutor argued at trial that she was also surprised by J.B.'s testimony. The district court denied appellant's motion for a mistrial reasoning that although the evidence may be exculpatory, the prosecution did not have any way of knowing this was exculpatory evidence since there was no specific inquiry by the state regarding the testimony in question. The district court found that the testimony in question was contained in videotapes, which had been provided to appellant prior to trial.

Appellant also argues that the prosecutor violated discovery by not providing him with notes of her conversation with the BCA scientist. The prosecutor did not provide the notes to appellant until just prior to her trial examination of the BCA witness. There was no objection or motion by appellant concerning any discovery

violation in regards to the notes of the prosecutor's conversation with the BCA scientist.

Although appellant was given an opportunity to cross-examine J.B. regarding her testimony, his defense was arguably hindered by the failure of the prosecutor to promptly supply appellant with her notes. The state did not intentionally keep testimony from appellant, but the lack of diligence or knowledge by the prosecutor of J.B.'s testimony does not erase the prejudice that may have resulted from surprising appellant. However, we conclude that, on this issue, appellant did not suffer substantial prejudice because he had the opportunity to confront witnesses.

*Interview Videotape*

■ Appellant argues that the prosecutor violated discovery rules by not turning over in a timely fashion the videotape of J.B.'s entire interview with police. Not until a week before trial was appellant given the videotape of the interview along with a summary of the interview.

The state argued that if appellant intended to use J.B.'s videotaped statements for purposes of impeachment, it would object unless the portion of the video was transcribed. Appellant advised the court that he received the tape one week before trial. The district court determined that it would receive the tape into evidence if it was necessary, on the condition that a transcript be provided when required, after the presentation of the tape. If a transcript was not provided, the evidence would be withdrawn from the record. Appellant agreed to the arrangement and indicated to the court that he intended not to offer the entire video, but only certain portions for impeachment if it became necessary. We find no prejudice.

**b. Prosecutorial Misconduct**

Appellant argues that the prosecutor committed misconduct during the trial that warrants a new trial. He argues that the prosecutor made improper comments during her closing argument.

■ This court will reverse a conviction due to prosecutorial misconduct at trial only if the misconduct, "when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers,* 654 N.W.2d 667, 678 (Minn. 2003). Reversal is required for unusually serious misconduct unless it was harmless beyond a reasonable doubt, but reversal is required for less serious misconduct only when it substantially influenced the verdict. *State v. Steward,* 645 N.W.2d 115, 121 (Minn.2002). "We look, however, at the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence." *State v. Walsh,* 495 N.W.2d 602, 607 (Minn.1993).

■ Generally, a party waives any challenge to the alleged misconduct on appeal by failing to object or seek a curative instruction. *State v. Ture,* 353 N.W.2d 502, 516 (Minn.1984). Here, appellant did not object at trial. However, appellate courts can review misconduct if it was unduly prejudicial. *State v. Whittaker,* 568 N.W.2d 440, 450 (Minn.1997).

■ Absent a timely objection a defendant is entitled to a new trial under the plain-error rule only when "the alleged misconduct was so clearly erroneous under applicable law and so prejudicial to the defendant's right to a fair trial, that the defendant's right to a remedy should not be forfeited." *State v. Hunt,* 615 N.W.2d 294, 302 (Minn.2000). "The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen,* 648 N.W.2d 681, 686 (Minn. 2002).

*Improperly Vouched for the Victim*

▉▉▉▉▉ Appellant argues that during her closing argument, the prosecutor improperly vouched for the victim's credibility. Vouching occurs "when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility." *State v. Patterson*, 577 N.W.2d 494, 497 (Minn.1998) (quoting *United States v. Beasley*, 102 F.3d 1440, 1449 (8th Cir.1996)). It is improper to "personally [endorse] the credibility of the state's witnesses [or to inject] personal opinion...." *State v. Parker*, 353 N.W.2d 122, 128 (Minn.1984).

▉▉▉ It is prosecutorial misconduct to bolster the credibility of the state's witnesses with the prosecutor's own opinion: an advocate "may not throw onto the scales of credibility the weight of his own personal opinion." *Ture*, 353 N.W.2d at 516.

Appellant argues that the prosecutor vouched for the credibility of J.B. by suggesting that J.B. had no reason to make things up and could not be lying if she said the same thing over and over. During closing argument, the prosecutor stated:

> And why, if [the victim] made it all up, is she able to tell the same details of the rape over and over and over again? Why does she tell the same details of the assault to her friend? Why does she tell the same details of the assault to her mom? Why does she tell the same details of the assault to police officers, the medical staff at North Memorial and to you?

The prosecutor later stated:

> It's difficult to say and keep the exact same facts in order over and over and over again. A 12-year old girl can't do that. She can't keep straight things that aren't true ... You all know it's easier to keep the truth straight than it

ever could be to keep the details of a lie straight.

The prosecutor improperly vouched for the credibility of the witnesses by essentially guaranteeing that the victim cannot have testified untruthfully based on her age and consistency. However, the prejudice was lessened by the district court's instructions to the jury. The district court instructed the jury that they are the "sole judges of whether a witness is to be believed and of the weight to be given a witness's testimony." The district court continued to instruct the jury on what it could use to help it determine credibility. Additionally, appellant's attorney reminded the jury that it was their duty to decide who was telling the truth. Overall, the instructions were sufficient to negate of any prejudice that may have occurred as a result of misconduct.

*Impermissibly Encouraged Sympathy For the Victim*

▉▉▉ Appellant argues that the prosecutor impermissibly encouraged sympathy for J.B. during direct examination and closing argument.

▉▉▉▉ A "prosecutor must avoid inflaming the jury's passions and prejudices against the defendant." *State v. Porter*, 526 N.W.2d 359, 363 (Minn.1995). When credibility is a central issue, this court pays special attention to statements that may inflame or prejudice the jury. *Id.* While the state's argument need not be "colorless," it must be based on the evidence produced at trial, or the reasonable inferences from that evidence. *State v. Gulbrandsen*, 238 Minn. 508, 511, 57 N.W.2d 419, 422 (1953).

Appellant argues that the prosecutor portrayed J.B.'s sexual assault physical exam as extremely uncomfortable thereby encouraging the jury to feel sorry for J.B. During questioning of the nurse who ex-

amined J.B., the prosecutor asked the nurse to describe the procedure. The prosecutor framed the inquiry in a manner that demonstrates that she did not seek the information for purposes of gathering sympathy for J.B., but to describe the method used to conduct the sexual assault physical examination in order to establish foundation for the nurse's testimony.

Appellant argues that during her closing argument, the prosecutor made remarks in an effort to garner sympathy for J.B. by posing to the jury the question of why would a 12–year–old girl make up a story of anal intercourse. The prosecutor's denial that she was trying to encourage undue sympathy for J.B. is a circular argument, but given the reasonable latitude attorneys get to suggest reasonable inferences from the facts, we do not find error here.

*Misstated the Evidence in the Record*

Appellant argues that the prosecutor mischaracterized evidence and made arguments unsupported by the evidence.

▆▆▆ The state's argument must be based on the evidence produced at trial, or the reasonable inferences from that evidence. *Gulbrandsen,* 238 Minn. at 511, 57 N.W.2d at 422 (1953). A prosecutor may argue all reasonable inferences from the evidence in the record but may not mischaracterize the evidence so as to mislead the jury. *State v. Salitros,* 499 N.W.2d 815, 817 (Minn.1993).

▆▆▆ Appellant argues that the prosecutor improperly stated during closing arguments that J.B. was taller during trial than when the assault occurred. He argues there is no evidence to support such an assertion. Even if this inference was a stretch of the evidence, there is nothing to show that this assumption by the prosecutor misled the jury.

▆▆▆ Appellant argues that the prosecutor mischaracterized the evidence by stating that the police could walk through the hole in the garage and by telling the jury during closing argument that appellant told .J.B. not to tell anyone about the assault. These arguments fail either because the prosecutor's inferences from the evidence were reasonable inferences or they were supported by the evidence. Any prejudice was harmless due to the court·instructing the jury to disregard any evidence or statement as to what the evidence is which differed from their recollection of the evidence.

*Material Misstatement of Impeachment and Substantive Evidence*

▆▆▆ Appellant argues that the prosecutor urged the jury to use evidence for a purpose other than that for which it was admitted. Appellant argues that the prosecutor improperly referenced in her closing argument to the fact that J.B. told police that appellant told her not to tell anyone of the assault. Appellant argues that the prosecutor used J.B.'s inconsistent statement for substantive purposes.

▆▆▆ A witness's prior inconsistent statement is admissible for impeachment purposes, but it is generally not admissible as substantive evidence. *See State v. Martin,* 614 N.W.2d 214, 224 (Minn.2000). When a prior inconsistent statement is admitted for impeachment purposes, the district court is often requested to instruct the jury that the statement is not evidence and should not be considered in reaching the verdict. *See, e.g., State v. Thames,* 599 N.W.2d 122, 126 (Minn.1999).

There was no prejudice to appellant because the district court properly instructed the jury not to consider inconsistent statements as substantive evidence but "should be considered only to test the believability and weight of the witness's testimony."

*Double Hearsay*

 Appellant argues that the district court impermissibly permitted the prosecutor to elicit double hearsay to appellant's detriment. He argues that when the court allowed Sergeant Spencer to testify about what J.B.'s mother had told him about what J.B. had told her, it allowed into evidence impermissible double hearsay.

The district court agreed that Sergeant Spencer's statement was double hearsay. *See* Minn. R. Evid. 801(c) (defining hearsay). Evidence containing double hearsay is admissible if each item of hearsay falls into a hearsay exception. Minn. R. Evid. 805. Hearsay evidence is inadmissible unless the evidence is subject to an exception to the hearsay rule. Minn. R. Evid. 802.

Although the district court conceded that the testimony was double hearsay, the court allowed the testimony because the statements by the victim's mother and friend were statements from witnesses who testified in court.

The statements are not hearsay under Minn. R. Evid. 801(d)(1)(B). Rule 801(d)(1)(B) applies to prior statements that are consistent with the declarant's trial testimony and that are helpful in evaluating the credibility of the declarant as a witness. Sergeant Spencer was asked about what J.B.'s mother had told him about what J.B. told her regarding the type of assault that took place. Sergeant Spencer's testimony was consistent with the mother's trial testimony. Sergeant Spencer was also asked what J.B.'s friend had told him about what J.B. had told her. Again, the answer was consistent with J.B.'s friend's trial testimony.

*Mother's Opinion of J.B.'s Truthfulness*

 Appellant argues that the district court impermissibly permitted the prosecutor to elicit from J.B.'s mother an opinion about J.B.'s truthfulness. During examination of J.B.'s mother, the prosecutor asked, over objection by appellant, if she would characterize the fact that J.B. did not tell her that she went to the park with appellant as an omission or a lie. Appellant argues that because J.B.'s credibility was central to the case, it was highly prejudicial for the jury to be told that J.B.'s mother continued to believe J.B.'s story even though she had never been told that J.B. went to the park with appellant in violation of family rules.

The prosecutor asked the victim's mother, "Would you characterize [the victim] not telling you that she had been to the library and walked to the park with [appellant] as an outright lie or as an omission?" The mother testified an "omission." The prosecutor continued, "Any reason to doubt the rest of what she told you?" The mother answered, "Absolutely not."

This vouching for J.B.'s credibility by J.B.'s mother was improper. The damage is lessened because in the real world a commonsense jury would expect a young daughter's mother to state that. Additionally, appellant had every opportunity to cross-examine, and did so, regarding the challenged testimony. Thus, we do not find reversible error on this issue.

*Questioning the Expert Witness Beyond the Scope of Direct*

 Appellant argues the district court impermissibly permitted the prosecutor to cross-examine an expert witness beyond the scope of direct examination.

Minn. R. Evid. 611(b) limits cross-examination "to the subject matter of direct examination and matters affecting the credibility of the witness." Appellant called the BCA agent to testify that she found no semen or saliva on swabs taken into evidence. He argues that the prosecutor impermissibly questioned the BCA agent with leading questions for possible explanations of why there might be no semen or saliva on the swabs. He argues

that this was clearly beyond the scope of questioning.

On direct, appellant questioned the expert witness on the procedures used to perform her duties. Appellant also questioned the witness about semen and ejaculation. On cross-examination, the prosecutor properly questioned the expert regarding procedures used to collect evidence and the results of the tests. The questions asked by the prosecutor were not beyond the scope of the direct examination.

*Closing Argument Reference*

Appellant argues that the district court impermissibly precluded him from referring in his closing argument to the state's failure to call the BCA expert witness to testify. He argues that he should have been allowed to acknowledge the fact that the state failed to call the BCA expert witness.

The BCA expert witness was appellant's witness and the jury was aware of this fact. It was appellant who ensured that the jury knew so by asking the BCA expert witness who had subpoenaed her to court (appellant did). Additionally, during his closing argument, appellant spoke of respondent's witnesses.

**d. Jury instructions**

 District courts are allowed "considerable latitude" in the selection of language for the jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explain[ ] the law of the case." *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). "An instruction is in error if it materially misstates the law." *State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001) (citations omitted).

 Appellant argues he was entitled to his proposed verdict form modifications by adding language stating that the order

in which the court reads the verdict forms to the jury "gives no indication of bias one way or another on [the court's] part." He argues that the jury was likely to find him guilty because without a disclaimer or reversal of the order in which the verdict forms were read, it was subliminally influenced to find him guilty.

This court will assume that jurors are intelligent and practical people who take the district court at its word, and are guided by the plain language of the court's instructions. *State v. Edwards,* 269 Minn. 343, 350, 130 N.W.2d 623, 627 (Minn.1964). Here, the court instructed the jury that "[t]he order in which the instructions are given is of no significance." The jury was not subliminally influenced by the way the verdict forms were read.

**II.**

 Appellant argues that a cumulative effect of errors denied him of a fair trial requiring reversal. Appellant is entitled to a new trial if the errors, when taken cumulatively, had the effect of denying appellant a fair trial. *State v. Keeton,* 589 N.W.2d 85, 91 (Minn.1998). Although some errors by the court and prosecutor were not, by themselves prejudicial, we find a cumulative effect of the following errors denied appellant a fair trial.

*Improperly Shifted the Burden of Proof*

During her closing argument, the prosecutor improperly shifted the burden of proof and misstated the presumption of innocence.

During her closing argument, the prosecutor stated:

> [I]n order for you to find him not guilty, you are going to have to find that she made up this whole thing to accuse a stranger, that she lied here in Court, she lied to the hospital, she lied to the police, she lied to her mom, she lied to her

friend, the medical evidence about whether there are samples or not, Randine Petersen's testimony that her injury is consistent with anal penetration, all that is wrong.

Additionally, the prosecutor stated, "[Appellant is] no longer presumed innocent. . . ." Finding no error, the district court held that the prosecutor did not continue with her argument after objection and that it had previously instructed the jury that the arguments of counsel are not evidence and that they should be disregarded if they conflict with the law. The court further reasoned that the error was not intentionally committed by the prosecutor. It then stated that it would reemphasize to the jury that they should disregard any statements by the attorneys that is contrary to what was introduced as evidence. The court failed to do that, and the omission by the court of the curative statement that it said it would give, magnified the error. We conclude that the prosecutor's comments during closing argument improperly shifted the burden of proof. The comment by the prosecutor that appellant was no longer presumed innocent goes against the fundamental tenets of the judicial system that an individual is innocent until proven guilty. Also, the jury does not need to find, as the prosecutor argued, that "all [the evidence] is wrong" in order to find appellant not guilty. The jury only needs to have a reasonable doubt regarding appellant's guilt in order to find appellant not guilty.

### c. Evidentiary rulings

█ The district court made erroneous evidentiary rulings. "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003). When reviewing evidentiary rulings, "our duty is to look at the record as a whole to determine whether, in light of the evidence

therein, the district court acted 'arbitrarily, capriciously, or contrary to legal usage.'" *State v. Profit*, 591 N.W.2d 451, 464 n. 3 (Minn.1999) (quotation omitted). "On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *Amos*, 658 N.W.2d at 203. "If there is a reasonable possibility that the verdict might have been more favorable to the defendant if the evidence had not been admitted, then the error in admitting the evidence was prejudicial error." *State v. Post*, 512 N.W.2d 99, 102 (Minn.1994).

*Videotaped Statement*

The district court impermissibly precluded appellant from cross-examining J.B. with her prior inconsistent videotaped statement and from utilizing it in front of the jury to refresh her recollection.

█ Appellant intended to use J.B.'s videotaped statement to demonstrate to the jury the inconsistency between the facts she related in her statement and those she testified at trial. During the trial, the district court allowed J.B. to review her videotaped statement prior to appellant examining her regarding her inconsistencies. Under Minn. R. Evid. 613(a), J.B. may be examined without disclosing the contents of her prior statement. Pursuant to Minn. R. Evid. 613(b), J.B., after she testified, would have been given an opportunity to explain or deny her videotaped statements. Appellant was not afforded the opportunity to first ask J.B. about her statement and then play the video after her testimony was given to refute her testimony as required by the rules. Instead of bringing the video equipment into the courtroom, the district court allowed J.B. to watch the videotaped statement outside the courtroom *prior* to appel-

lant's examination of J.B. The district court stated:

> Rather than have the jury bounce back and forth while [the victim] looks at [the videotape], what I'm proposing is simply have her look at the videotape now outside the presence of the jury. Everyone will be on the same page and it's not an exhibit.

Instead of letting appellant ask J.B. questions about her previous statements and then showing the video only after J.B. testified inconsistently with the videotaped statement, the district court allowed J.B. to first refresh her memory. Prior to being examined by appellant, the district court stated, "I'll give you a chance to watch that videotape so you have something to refresh your recollection about what you said at that earlier time." A process appellant agreed to after extensive discussion between the court and both parties. Appellant now contends that prohibiting cross-examination of J.B. prior to her refreshing her memory with the videotape violated appellant's right to due process, to confront his accuser, and to present his defense. The right to present a defense includes the opportunity to develop the defendant's version of the facts, so the jury may decide where the truth lies. *State v. Carroll,* 639 N.W.2d 623, 627 (Minn.App. 2002), *review denied* (Minn. May 125, 2002).

*Corroboration*

The district court committed prejudicial error when it granted the state's request to add a jury instruction that in a prosecution for criminal sexual conduct, the testimony of the victim need not be corroborated. *See State v. Johnson,* 679 N.W.2d 378, 388 (Minn.App.2004), *review denied* (Minn. Aug. 17, 2004).

The state concedes it was error for the district court to instruct the jury that the testimony of the victim need not be corroborated. However, the state argues that the error did not prejudice appellant. The state points to decisions by this court in which where a corroboration instruction was given in error, but this court found no prejudice because the jury was properly instructed on the burden of proof and that the state must prove its case beyond a reasonable doubt. *See Johnson,* 679 N.W.2d at 388 (holding where the challenged instruction was considered in conjunction with the district court's proper instruction of the jury on the state's burden of proving its case beyond a reasonable doubt, there was no prejudicial error); *State v. Williams,* 363 N.W.2d 911, 914 (Minn.App.1985) (concluding that although the corroboration instruction was error, there was no prejudice considering the court's instructions in their entirety), *review denied* (Minn. May 1, 1985).

Unlike in *Johnson,* here the district court erred by failing to give a curative jury instruction when the prosecutor stated in closing argument that appellant was not to be presumed innocent. Coupled with this error, the district court's instruction that the victim's statement need not be corroborated, and the lack of physical evidence to show that appellant penetrated J.B., created a cumulative effect of errors that denied appellant a fair trial

**III.**

 Appellant argues that the evidence was insufficient to support his conviction. In considering a claim of insufficient evidence, this court's review is limited to a "painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, [is] sufficient to allow the jurors to reach the verdict which they did." *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that the jury believed the state's witnesses and disbe-

lieved any contrary evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). The reviewing court "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

The jury found appellant guilty of third-degree criminal sexual conduct. Minn. Stat. § 609.344, subd. 1(a) (2004) states that third-degree criminal sexual conduct exists where there is sexual penetration and:

> the complainant is under 13 years of age and the actor is no more than 36 months older than the complainant. Neither mistake as to the complainant's age nor consent to the act by the complainant shall be a defense.

CRIMJIG 12.25 defines the elements of the crime: (1) appellant intentionally sexually penetrated the victim, (2) at the time of the assault, the victim was under 13 years-old, (3) appellant was not more than 36 months older than the victim, (4) and the assault took place in the appropriate county. 10 *Minnesota Practice*, CRIMJIG 12.25 (1999). The CRIMJIG states that the emission of semen is not necessary to accomplish sexual penetration. *Id.* The state had to prove each element beyond a reasonable doubt.

Appellant argues that there was insufficient evidence to show that he intentionally sexually penetrated J.B. The only evidence that showed appellant intentionally sexually penetrated J.B. was J.B.'s testimony. J.B.'s testimony had many inconsistencies. J.B. changed her story as to whether she went to the library with appellant prior to playing basketball or that she saw appellant at the corner bus stop and then went to play basketball. J.B. testified at one point that she left the park before appellant, and later testified that appellant left the park first. J.B. testified that at one point when she entered the garage where the assault took place, she sat on a file cabinet, but at another point testified that she sat on a couch. J.B. testified that appellant pulled her through a hole into the garage, but another time inferred she and appellant opened the garage door and walked into the garage. These inconsistencies are not taken lightly when coupled with the fact there was no physical evidence to support penetration. The nurse who conducted an examination of J.B. found no evidence of cuts, bruising, or tearing of J.B.'s rectum. Testing conducted by the BCA of swabs from J.B.'s rectum area and neck showed no presence of semen or saliva. Finally, there was no semen found on J.B.'s clothing. The evidence to support the jury's verdict is thin. However, we stop short of reversing the conviction for a lack of evidence. That would mean that jeopardy had attached and the state could not recharge. Our decision is to reverse the conviction for the previously stated reasons and remand for a new trial.

## VI.

The state argues that the district court erred when it refused to impose a stayed adult sentence.

The state moved, and the district court granted the motion, to designate appellant under the court's extended juvenile jurisdiction (EJJ). At his post-trial sentencing hearing, the district court imposed on appellant a juvenile disposition only and no stayed adult sentence. The district court reasoned that a stayed adult sentence was not necessary because the offense of which appellant was found guilty could only be committed by a juvenile.

Post-trial, appellant argued that under this court's decision in *In re T.C.J.*, 689

N.W.2d 787 (Minn.App.2004), it violates his rights for the court to impose a stayed adult sentence because the jury found him guilty of an offense normally handled exclusively in the juvenile system. The state argued at the post-trial hearing that in *T.C.J.* this court held Minn.Stat. § 260B.130, subd 4(b) (2002) unconstitutional and therefore, a stayed adult sentence is warranted under Minn.Stat. § 260B.130, subd 4(a) (2004) because part (b) is no longer valid.[1]

 Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn. 1996).

We conclude that although a literal reading of subpart 4(a) would require the imposition of a stayed adult sentence, a stayed adult sentence is not warranted here because appellant was guilty of an offense of which only a juvenile can be convicted. There is no conceivable reason to impose a stayed adult sentence for a crime only a juvenile can commit. This court stated in *T.C.J.*, in which the defendant was charged with first- and third-degree assault but found guilty only of third-degree assault, an offense that he would have otherwise only been subject to a juvenile disposition, that it was "inconsistent with the protections afforded ... under the United States and Minnesota Constitutions" that the defendant be mandated by statute to a stayed adult sentence for his third-degree assault. 689 N.W.2d at 795.

The state also argues that the district court abused its discretion by refusing to rank appellant's offense. Because we conclude that a stayed adult sentence is not

warranted, there was no need for the district court to rank appellant's offense.

## DECISION

Although we find no one individual error that requires a new trial, the cumulative effect of trial error requires a new trial.

In our criminal justice system, it is fundamental that an individual accused of a crime is presumed innocent until proven guilty. At times during the trial, it appears the state's burden was impermissibly shifted to appellant to prove his innocence. The state must prove beyond a reasonable doubt that the individual committed the crime.

**Reversed and remanded for a new trial.**

LANSING, Judge (concurring in part, dissenting in part).

I agree that the district court properly sentenced D.D.R. by imposing a juvenile sentence and not imposing a stayed adult sentence on the third-degree criminal-sexual-conduct offense. But I respectfully dissent from the majority's determination that cumulative error requires that we reverse and remand for a new trial.

### I

The majority identifies three errors that combined to deny D.D.R. a fair trial: the prosecutor's statements in closing argument about the presumption of innocence, the district court's procedure for D.D.R.'s use of J.B.'s videotaped statement, and the court's instruction to the jury that the victim's testimony need not be corroborated. Viewed in their proper context, these three alleged errors did not undermine the

---

1. Minn.Stat. § 260B.130, subd. 4 states in pertinent part: (a) If an extended jurisdiction juvenile prosecution results in a guilty plea or finding of guilt, the court shall: (1) impose one or more juvenile dispositions ...; and (2) impose an adult criminal sentence, the execution of which shall be stayed....

fairness of the trial process, and neither the individual nor the cumulative effect of the statements, rulings, or instructions deprived D.D.R. of a fair trial.

First, the record does not support D.D.R.'s claim that the prosecutor's statements in closing argument "improperly attempted to shift the burden of proof to the defense and misstated the presumption of innocence." This claim essentially rests on an isolated fragment of one statement by the prosecutor: "[D.D.R.] is no longer presumed innocent." But this fragment must be evaluated in the context of the full record. In closing argument the prosecutor described the criminal trial process as follows:

> There are certain principles of law that the Judge has talked to you about as well. Two of them are the most important. In every criminal case, which this is, there are two overriding principles that govern how a case is handled. First of all, the defendant is presumed innocent and the second is that the State has the burden to prove him guilty beyond a reasonable doubt. Now, you must keep these in mind as you evaluate the evidence. Remember that the presumption of innocence stays with the defendant only until the evidence that the State produces prove[s] him guilty beyond a reasonable doubt. *At that point he is no longer presumed innocent.*

(Emphasis added.) The prosecutor recounted the evidence and, in summarizing, stated, "He committed these crimes beyond a reasonable doubt. He's no longer presumed innocent and justice requires that he—." At this point, defense counsel objected.

The prosecutor's argument essentially paralleled the district court's general instructions at the beginning and the end of the trial that D.D.R. is presumed innocent unless and until he is proved guilty beyond

a reasonable doubt. Taken in the full context of the closing argument, the prosecutor's statement is neither erroneous nor prejudicial. *See State v. Walsh,* 495 N.W.2d 602, 607 (Minn.1993) (emphasizing that closing arguments should be reviewed for misconduct "as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence").

D.D.R. assigns further error to the district court's failure to give a curative instruction on this segment of the prosecutor's argument. Following the closing statements, the district court reinstructed the jury that it should rely on the evidence and the law as stated by the district court and twice restated the presumption of innocence. The defense attorney, in closing argument, also addressed the presumption of innocence. The defense attorney did not ask for a curative instruction on the presumption of innocence and did not object to the district court's final instructions. In addition, the district court submitted to the jury extensive written instructions that addressed the respective roles of the judge and the attorneys and restated the presumption of innocence.

D.D.R. similarly alleges that another segment of the state's closing argument amounted to error and caused cumulative prejudice. These statements were directed to J.B.'s credibility and were not objected to at trial. The prosecutor essentially told the jury that it would have to discount J.B.'s testimony to acquit D.D.R. D.D.R. has not demonstrated that these comments constitute error, let alone plain error. J.B.'s testimony was a significant component of the state's case, and it is not plain error for the prosecutor to argue the credibility of this evidence. The state is allowed to make reasonable and vigorous arguments on credibility. *See State v.*

*Jensen,* 308 Minn. 377, 380, 242 N.W.2d 109, 111 (1976) (rejecting concept that closing arguments must be colorless); *see also State v. Parker,* 353 N.W.2d 122, 128 (Minn.1984) (finding no prejudice in prosecutor's defense of veracity of state's witnesses by saying, "[I]f you think that these witnesses are lying, you can only come to that conclusion if you come to the conclusion that this whole thing [is] phony ⋯ from top to bottom and stem to stern."). The prosecutor's closing argument did not shift the burden of proof, misstate the presumption of innocence, or improperly argue the credibility of the state's witness.

The second alleged error is the district court's ruling on D.D.R.'s use of J.B.'s videotaped statement. Although the argument on this issue is confusing, the transcript is not. Both the defense attorney and the prosecutor agreed to the court's suggested procedure to accommodate D.D.R.'s cross-examination of J.B. on parts of the videotape that had not been transcribed. The record discloses neither an objection nor an error. *See* Minn. R. Evid. 611(a) (allowing district court to exercise reasonable control over mode and order of interrogating witnesses and presenting evidence), 613(b) (providing that witness must be afforded prior opportunity to explain or deny allegedly prior inconsistent statement). As agreed before the trial began, the court allowed D.D.R. to show J.B. the videotape, outside the presence of the jury, to refresh her recollection. J.B. watched the videotape after direct examination, and D.D.R. was able to cross-examine her in front of the jury about the content of the tape.

The final alleged error is the district court's instruction to the jury that, in a prosecution for criminal sexual conduct, the testimony of the victim need not be corroborated. We have previously stated that the lack of corroboration in a sexual assault case is an evidentiary matter that is generally not appropriate as a substantive jury instruction. *State v. Williams,* 363 N.W.2d 911, 914 (Minn.App.1985), *review denied* (Minn. May 1, 1985). But additional considerations are important to determine whether this instruction constituted prejudicial error in D.D.R.'s trial. In her opening statement, the defense attorney told the jury, "You will not hear that there's any physical evidence to corroborate—corroborate is kind of a big technical legal term—but there's no physical evidence to confirm what she told her, the police, and what she told her mother." The issue of corroboration was thus raised by D.D.R. in the first instance, and D.D.R. implied that the absence of corroboration was legally significant. In this context the district court's instruction was a correct statement of the law that offset an incorrect implication. *See* Minn.Stat. § 609.347, subd. 1 (2004) (stating that corroboration is not required in criminal-sexual-conduct prosecutions); *see also State v. Ani,* 257 N.W.2d 699, 700 (Minn.1977) (confirming that Minn.Stat. § 609.347, subd. 1, correctly states evidentiary rule). The no-corroboration instruction did not result in an unfair trial.

This record simply does not support a determination that cumulative error requires that the jury's verdict be reversed and that the case be remanded for a new trial. Therefore, I would affirm the jury's verdict.

## II

Although I concur with the decision to affirm the district court's imposition of a juvenile disposition and not a stayed adult conviction, I do not agree with the rationale argued by D.D.R. and accepted by the majority. D.D.R. and the majority assert that, although a literal reading of subdivision 4(a) of the extended-juvenile-jurisdiction (EJJ) statute would require a stayed

adult sentence, imposing the sentence would be improper because D.D.R. was found guilty of an offense that only a juvenile may commit. *See* Minn.Stat. § 260B.130, subd. 4(a) (2004) (stating that, upon finding of guilt in EJJ prosecution, court shall impose juvenile disposition and stayed adult sentence). To support its determination, the majority cites our decision in which we addressed the constitutionality of Minn.Stat. § 260B.130, subd. 4(b) (2002). *In re T.C.J.*, 689 N.W.2d 787, 793–96 (Minn.App.2004), *review dismissed* (Minn. Jan. 26, 2005). But this reliance misstates our holding in *T.C.J.* In *T.C.J.* we held that subdivision 4(b) is unconstitutional insofar as it treats more harshly a juvenile who arrives at an EJJ disposition following designation *by the court* than a juvenile designated an EJJ juvenile through adult certification by the prosecution. *Id.* at 796. This distinction arises because subdivision 4(b), as written, does not apply to a judicial designation of EJJ and only comes into operation following EJJ designation *by the prosecutor* in a delinquency petition; we held that this distinction lacks a rational basis. *Id.* D.D.R. was designated an EJJ juvenile by the prosecutor, and the statute therefore does not manifest an unconstitutional result in this case.

The district court's decision not to impose a stayed adult sentence on D.D.R. was proper because he was convicted of third-degree criminal sexual conduct under Minn.Stat. § 609.344, subd. 1(a) (2004), an offense for which commitment to prison is not presumptive under the Sentencing Guidelines and applicable statutes. *See* Minn.Stat. § 260B.130, subd. 1(2) (2004) (stating offenses that result in EJJ designation). As we stated in *T.C.J.*, subdivision 4(b) is "sensible and fair" when it ensures that an absence of guilt for the offense that triggered an EJJ prosecution "permit[s] the punishment for the nontriggering offenses to revert to the juvenile

system." *T.C.J.*, 689 N.W.2d at 795. The same circumstances form the basis for D.D.R.'s sentencing, and I therefore join the majority's decision to affirm the sentence. But the reasoning underlying D.D.R.'s argument is unsound and will result in further confusion in a complex area.