**STATE of Minnesota, Respondent,**

v.

**Michael John RICE, Appellant.**

**No. C3–87–128.**

Court of Appeals of Minnesota.

Sept. 1, 1987.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted Co. Atty., Rochester, for respondent.

C. Paul Jones, State Public Defender, Melissa Sheridan, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LESLIE, P.J., SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Appellant Michael Rice was convicted of burglary in the first degree, Minn.Stat. § 609.582, subd. 1(a), and theft, Minn.Stat. § 609.52, subds. 2(1) and 3(2) (1984). He claims he was denied the right of confrontation and that the trial court abused its discretion in ruling that he could be impeached with prior convictions if he testified and in granting immunity to a co-defendant. He also contends the evidence was insufficient to prove that he stole more than $250. We affirm.

## FACTS

On February 16, 1986, around 11:45 p.m., Patricia Riccioli answered a knock on her door. As she opened the door she saw Michael Rice wearing a ski mask. She knew Rice personally and had seen him the night before when Rice, Kathy Bullion and Tim Klingsporn had visited her and asked to borrow money. Riccioli had previously told Bullion she had $975 in cash and some food stamps which she kept in her purse.

Riccioli recognized Rice by his clothes, which he had been wearing the night before, his physique and his hair style. At first she thought the disguise was meant as a joke, but Rice pushed her aside, went to her bedroom, grabbed her purse and ran from the building. Riccioli followed him, shouting. Rice ran to a waiting car about a block and a half away. Riccioli recognized the car as Kathy Bullion's light blue Pontiac. Rice got into the car and locked his door. Riccioli ran to the driver's side and saw Tim Klingsporn in the driver's seat. She grabbed at the car and pounded on the window, but the car drove off. She returned to her home and called the police.

Rice was charged with burglary and theft. Klingsporn, who was also charged in connection with the incident, testified after being granted use immunity. He admitted borrowing Bullion's car, giving Rice a ride, dropping Rice off and driving around the corner. He also testified that he heard shouting, saw a couple of people run toward him, and that when Rice got back into the car he said, "Go, go, go!" Rice was convicted of first-degree burglary and theft.

## ISSUES

1. Did the trial court err in refusing to allow defense counsel to cross-examine the complainant on the source of the stolen money?

2. Did the trial court abuse its discretion in granting immunity to the co-defendant?

3. Did the trial court abuse its discretion in ruling that appellant could be impeached with prior convictions?

4. Was the evidence sufficient?

## ANALYSIS

### I

█ In cross-examination Riccioli testified that she had $975 plus food stamps in her purse. She stated that she had cashed a $267 welfare check. Defense counsel then asked, "Where did the rest of the money come from?" The trial court sustained the prosecutor's objection on relevancy grounds. Defense counsel argued the question was relevant because Riccioli originally told the police officer $1,217 was stolen and that "[t]here's two different figures that we have now * * *." Defense counsel stated, "The only thing we can account for now is $260–some dollars maximum with food stamps * * *."

Rice claims the refusal to permit Riccioli to answer constituted an infringement on his right of confrontation and cross-examination under the sixth amendment. We disagree for several reasons.

1. Riccioli testified to the source of the $267 welfare check. Failure to permit cross-examination on the source of the additional money in her purse could not be prejudicial, because Rice was charged with theft over *$250* but not more than $2,500.

2. The source of the remaining money was not an element of either offense or integral to Rice's defense. Defense questions were not directed to whether the money had in fact been in Riccioli's purse; neither Bullion nor Klingsporn were asked whether they had seen or been told of the money. Riccioli was not asked questions about how long she had the money or what the bill denominations were, questions which arguably probe whether she indeed had the money. *See State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981).

3. Rice made no offer of proof on Riccioli's expected answer. Under Minn.R.Evid. 103(a)(2), this failure precludes Rice from now claiming error. *State v. Fratzke*, 354 N.W.2d 402, 408 (Minn.1984); *State v. Bjornson*, 378 N.W.2d 4, 10 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Jan. 17, 1986).

### II

█ The State listed Klingsporn as a potential witness on its witness list several months before trial. Rice waived an omnibus hearing. On the morning of trial the prosecutor moved for an order compelling Klingsporn's testimony. Klingsporn, represented by counsel, objected and the trial court deferred a ruling and scheduled a hearing later that afternoon.

At the hearing and after the State had filed a written motion for an order compelling Klingsporn's testimony, the trial court ruled the motion was timely and found that compelling Klingsporn's testimony would not be contrary to the public interest.

Rice now objects to the manner in which the State compelled Klingsporn's testimony. Rice concedes that Minn.R.Crim.P. 10.-01 was technically complied with because the request for Klingsporn's testimony was made prior to trial. However, Rice claims the procedures employed "were clearly calculated to catch [him] off guard at the last minute" and effectively prevented him from independently investigating Klingsporn's potential testimony because he had no reason to expect Klingsporn would be a witness without a Minn.Stat. § 609.09 request.

The notice required in Minn.Stat. § 609.-09 is to the witness whose testimony would be compelled, not the defendant. *See* Minn.Stat. § 609.09, subd. 1 (1986). The state complied with its discovery obligation by listing Klingsporn as a witness several months before trial; the claim of surprise is not supported. Additionally, Rice has cited no authority providing him standing to challenge the grant of immunity to a witness. The general rule is that the fifth amendment privilege against self incrimination is personal to the witness, and a defendant does not have standing to contest the grant of immunity to a witness who testifies against him. *U.S. v. Lewis*, 456 F.2d 404, 410 (3rd Cir.1972). *See Garner v. U.S.*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976).

### III

█ Rice claims the trial court abused its discretion in ruling that if Rice testified

he could be impeached with a 1985 conviction for aggravated robbery and a 1983 conviction for unauthorized use of a motor vehicle. This ruling was a discretionary decision, and we find no abuse of that discretion. *See State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978).

## IV

Rice challenges the sufficiency of the evidence. Riccioli testified that she had $975 in cash in her purse. This is sufficient to establish that Rice stole more than $250. *See State v. Anderson,* 405 N.W.2d 527 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. July 22, 1987).

## DECISION

Rice's convictions for burglary and theft are affirmed.

Affirmed.