STATE of Minnesota, Respondent,

v.

Laird Brando KEETON, Jr.,
petitioner, Appellant.

No. C5–97–52.

Supreme Court of Minnesota.

Dec. 31, 1998.

Leslie J. Rosenberg, Sp. Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, James C. Backstrom, Dakota County Atty., Jean M. Mitchell, Asst. Dakota County Atty., Hastings, for respondent.

Heard, considered, and decided by the court en banc.

## OPINION

BLATZ, Chief Justice.

Appellant was convicted of attempted murder in the first degree and assault in the second degree and sentenced to consecutive terms of 180 months and 36 months, respectively. The court of appeals affirmed the convictions.[1] We hold that the trial court erred in excluding appellant and his attorney from a pretrial hearing held to determine if appellant had threatened a witness. We further hold that the trial court failed to properly analyze critical hearsay evidence in accordance with Minn. R. Evid. 804(b)(3) and (5) and the decisions of this court. These errors, taken cumulatively, were not harmless beyond a reasonable doubt. Accordingly, we reverse the judgment of the trial court and remand the case for proceedings pursuant to this opinion.

On January 17, 1995, Steven Glaze and Jeffrey Peltier came to the home of Laird Brando Keeton, Jr., the appellant. The state alleged that appellant made plans with Glaze and Peltier to rob the U.S. Discount Mart in West St. Paul that evening, and appellant provided the shotgun used in the robbery. When the three teenage boys arrived at the store, Glaze and Peltier went in while appellant remained outside. During the robbery, Glaze fired the shotgun twice. The second shot struck Daniel Lexau, the store clerk, in the back as he was fleeing the store. Michael Zenzola, a customer in the store at the time of the robbery and shooting, was not physically injured. Unable to open the cash register, Glaze and Peltier grabbed a cigarette carton and escaped out the back of the store, where they joined appellant. The police later found the shotgun with Glaze's fingerprints on it behind the store.

The police first interviewed appellant regarding the crime on April 10, 1995. Appellant admitted to the police that Glaze and Peltier had visited his home on the day of the robbery. However, appellant claimed that only Glaze and Peltier were involved in planning the robbery, that the shotgun in the robbery used belonged to Glaze, and that appellant just walked along with them to the store and waited outside.

The same day, the police interviewed Peltier at a juvenile detention facility, where he was being held for an unrelated crime. Peltier described his role in the crime, and stated that appellant made the plans for the robbery and provided the shotgun. The next day, the police interviewed Glaze, who was also being held for an unrelated crime, but in another juvenile detention facility. After the investigating officer told Glaze that the police found his fingerprints on the shotgun, Glaze described the crime and admitted that he had shot the victim. Like Peltier, Glaze also stated that appellant planned the robbery and provided the shotgun.

Prior to trial, the state requested use immunity for both Glaze and Peltier pursuant to Minn.Stat. § 609.09. Both appellant and his attorney were excluded from the use immunity hearing for Glaze, despite objections made to the trial court. Following the hearing, the court granted use immunity; nonetheless, Glaze still refused to testify. The state and Glaze then requested an *in camera* hearing, with only Glaze and his attorney present, to determine if appellant had threatened Glaze. The court granted the request and sealed the record of the *in camera* hearing. Appellant did not have access to this portion of the record until appeal.

At the *in camera* hearing, only Glaze, Glaze's attorney, and court personnel were

---

1. *State v. Keeton,* 573 N.W.2d 378 (Minn.App. 1997).

present. Glaze's attorney, who was not sworn as a witness, read a letter allegedly written by appellant and sent to Glaze in July 1997. The letter, which was not dated or signed, stated:

> This is the way I see things. If I go to prison I ain't never getting out. That's on everything whoever put me behind bars. P.S. gonna meet their maker. Shit, I ain't I bullshitten'.

Glaze's attorney argued that the letter was a clear threat by appellant against Glaze, and that Glaze felt his life would be in danger if he testified against appellant. Glaze's attorney also told the trial court that appellant had repeatedly threatened Glaze prior to trial.

The trial court asked Glaze if what his attorney said was true, and Glaze responded "yes." The court then asked Glaze if he would testify under court order at trial. Glaze refused, stating "I'm in fear for my safety, your Honor, because I was threatened by Mr. Keeton." Despite the court's warnings that Glaze would be incarcerated for criminal contempt, Glaze resolutely refused to testify.

In contrast to the trial court's exclusion of appellant at Glaze's use immunity hearing, the court did not exclude either appellant or his attorney from Peltier's use immunity hearing. Again, despite the court's warnings that Peltier would be incarcerated for contempt, Peltier also told the court that he would refuse to testify. The state, concerned that Peltier was refusing to testify because appellant also had threatened Peltier, requested another *in camera* hearing. However, Peltier's attorney said that no threats had been made to his client, and that an *in camera* hearing was not necessary. The court then excused appellant and his attorney from the contempt sentencing of Glaze and Peltier, who were each sentenced to 90 days in jail for refusing to testify.

Appellant's trial began the next day. At trial, the court overruled appellant's objections and allowed the state to introduce the statements that Glaze and Peltier made to the police inculpating appellant, as statements against interest pursuant to Minn. R. Evid. 804(b)(3). The court then admitted, over appellant's objection, the transcript of Peltier's sentencing for his role in the robbery, pursuant to Minn. R. Evid. 804(b)(5), the "catch-all" exception to the hearsay rule.

I.

We first consider appellant's claim that the trial court erred in excluding appellant and his attorney from a pretrial hearing held to determine if appellant had threatened Glaze. Appellant's counsel objected to appellant's exclusion from the pretrial hearing at the time, stating: "For the record, it's our position that Mr. Keeton should be present during all hearings and proceedings during the course of this trial."

Appellant argues that he was denied his Sixth Amendment constitutional right to confrontation [2] when the trial court excluded appellant and his attorney from the pretrial hearing regarding Glaze, and held the hearing *in camera*. Appellant also relies on Minn. R.Crim. P. 26.03, subd. 1(1) to support his claim that he had a right to be present at the *in camera* hearing. Minnesota Rule of Criminal Procedure 26.03, subd. 1(1) provides:

> The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence * * *.

The United States Supreme Court has recognized that the right to be present under Fed.R.Crim.P. 43 is broader than the right to be present under the federal constitution.[3] Minnesota Rule of Criminal Procedure 26.03, subd. 1 is modeled after the federal rule[4] and contains identical language. Our deci-

---

2. U.S. Const. amend. VI; Minn. Const., art. I § 6.

3. *United States v. Gagnon*, 470 U.S. 522, 527, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), *cited in State v. Thompson*, 430 N.W.2d 151, 152 (Minn.1988).

4. Comment to Minn. R.Crim. P. 26.03, subd. 1(1).

sions have applied the United States Supreme Court's interpretation to Minn. R.Crim. P. 26.03, subd. 1.[5]

Although the issue presented in this appeal is one of first impression, we previously held in *State v. Thompson* that an in-chambers hearing to determine the competency of a child witness is a "stage of the trial" under Minn. R.Crim. P. 26.03, subd. 1.[6] In *Thompson* we concluded:

[A] criminal defendant has a right to be present at a hearing to determine the competency of a witness, even a child witness. Therefore, if defendant or his attorney had asserted defendant's right to be present in this case, it would have been error for the trial court to deny defendant that right and we would have to determine whether or not the error was prejudicial.[7]

Just as a competency hearing for a child witness is a stage of trial, a hearing to determine if the defendant threatened a witness, thus waiving his right to confrontation, is also a stage of trial. We therefore hold that under the record presented to us on appeal, the trial court erred in excluding appellant and his attorney from the pretrial hearing. We need not determine if this error, standing alone, was harmless beyond a reasonable doubt. As discussed in the following sections, additional errors occurred which, taken cumulatively, had the effect of depriving appellant of a fair trial.

## II.

We next consider appellant's claim that the trial court erred in admitting the out-of-court statements of Glaze and Peltier. To evaluate appellant's claims, we must determine if the statements satisfy the requirements of the cited hearsay exceptions, Minn. R. Evid.

804(b)(3) and (5). Appellant argues that Glaze and Peltier's out-of-court statements to the police were inadmissible as hearsay. Specifically, appellant claims that the court erred in admitting the statements as statements against interest under Minn. R. Evid. 804(b)(3). Appellant further claims that the court erred in admitting Peltier's out-of-court statements made at his sentencing hearing under Minn. R. Evid. 804(b)(5), the catch-all exception. These claims will be discussed in turn.

### A.

We first decide whether the trial court erred in admitting the out-of-court statements made by Glaze and Peltier to the police officer pursuant to Minn. R. Evid. 804(b)(3). Minnesota Rule of Evidence 804 provides various hearsay exceptions when the declarant is unavailable as a witness. A declarant is unavailable as a witness when he "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so."[8] It is not disputed that Glaze and Peltier were unavailable as witnesses under this rule. Both witnesses refused to testify, despite the court's finding them in contempt of court and sentencing each of them to 90 days in jail for their refusal to testify.

When a declarant is unavailable, the court may admit the declarant's "statements against interest" pursuant to Minn. R. Evid. 804(b)(3).[9] Appellant claims that the statements by Glaze and Peltier to the police officer do not satisfy the requirements of this rule, because the relevant portions of the statement were not self-inculpatory. The statements by Glaze and Peltier contained both self-incriminating statements and state-

5. *See State v. Ware,* 498 N.W.2d 454, 457 (Minn. 1993) (citing *Thompson,* 430 N.W.2d at 152).

6. *Thompson,* 430 N.W.2d at 152.

7. *Id.* at 152–53.

8. Minn. R. Evid. 804(a)(2).

9. Minn. R. Evid. 804(b)(3) provides that a statement against interest is:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

ments which incriminated appellant. The trial court admitted the entire statements, not just the self-incriminating portions.

The United States Supreme Court recently addressed this issue in *Williamson v. United States.*[10] In *Williamson*, the Court analyzed Fed.R.Evid. 804(b)(3), which is textually identical to Minn. R. Evid. 804(b)(3). A six member majority of the Court held:

> [T]he most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.[11]

The Court reasoned that:

> Rule 804(b)(3) is founded on the common sense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true. This notion simply does not extend to the broader definition of "statement." The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.[12]

The Court then rejected the argument that statements collateral to self-inculpatory statements are sufficiently reliable:

> Nothing in the text of Rule 804(b)(3) or the general theory of the hearsay Rules suggests that admissibility should turn on whether a statement is collateral to a self-

inculpatory statement. The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability. We see no reason why collateral statements, even ones that are neutral as to interest * * * should be treated any differently from other hearsay statements that are generally excluded.[13]

Our court has expressly adopted the reasoning of *Williamson* and applied it to Minn. R. Evid. 804(b)(3).[14] As we noted in *Jones:*

> Prior to our adoption, in *Ford*, of the *Williamson* reasoning, a Minnesota trial court was under no obligation to attempt to parse out a witness' or co-defendant's statement to separate inculpatory from noninculpatory portions of the statement. This court had previously held that such an approach was acceptable, but not mandatory and, sometimes, not practical.[15]

Since the *Williamson* decision, this court held in both *Jones* and *Ford* that the non-self-inculpatory portions of a generally self-inculpatory statement are not admissible under Minn. R. Evid. 804(b)(3).[16]

In the present case, nothing in the record indicates that the trial court applied the *Williamson* analysis in determining that the entire statements were admissible. A trial court must analyze an out-of-court statement and determine which portions are admissible as statements against interest pursuant to Minn. R. Evid. 804(b)(3). We hold that the trial court erred in failing to perform such an analysis when admitting Glaze and Peltier's out-of-court statements. Because of our holding, we need not determine if the statements would satisfy the reliability and necessity requirements of the Sixth Amendment's confrontation clause.[17] We do note here,

---

10. 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

11. *Id.* at 600–01, 114 S.Ct. 2431.

12. *Id.* at 599–600, 114 S.Ct. 2431.

13. *Id.* at 600, 114 S.Ct. 2431.

14. *State v. Jones*, 556 N.W.2d 903, 908–09 (Minn. 1996); *State v. Ford*, 539 N.W.2d 214, 227 (Minn. 1995).

15. *Jones*, 556 N.W.2d at 909, n. 4.

16. *Id.* at 909; *Ford*, 539 N.W.2d at 227.

17. *See State v. Byers*, 570 N.W.2d 487, 493 (Minn.1997).

however, that if the out-of-court statements were admissible, the trial court's error of excluding appellant from the *in camera* hearing would make it difficult, if not impossible, to determine if appellant waived his confrontation rights.

### B.

 We next decide whether the trial court erred in admitting the transcript of Peltier's sentencing hearing into evidence. Minnesota Rule of Evidence 804(b)(5) provides for the admission of out-of-court statements when the declarant is unavailable as a witness, the statement has circumstantial guarantees of trustworthiness and the statement does not meet the requirements of the other specific hearsay exceptions.[18] As discussed previously, it is not disputed that Peltier was unavailable as a witness under this rule, and so the first requirement of this rule is met. As to the second requirement, we have adopted the "totality of the circumstances" approach for determining the trustworthiness, and therefore the admissibility, of statements under this rule.[19] Using this approach, we consider:

> [T]he character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify * * *; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability.[20]

In the present case, several factors indicate that Peltier's statement was not trustworthy, and had little evidentiary value. While the statement was made voluntarily and under oath, appellant did not have the opportunity to cross-examine Peltier. Further, Peltier's self-contradicting statement evidences an inherent lack of truthfulness and honesty. Peltier just responded with a "yes" to all of the leading questions asked by his attorney, even if such a response contradicted a previous response:

> Question: At that time, did you and two other individuals, Steven Glaze and Laird Keeton, enter a discount store on Robert Street located in West. St. Paul?
>
> Answer: Yes.
>
> * * * *
>
> Question: Okay. And at the time you entered the discount store, you entered the store with one other individual, is that correct?
>
> Answer: Yes.
>
> Question: And that would be Steven Glaze?
>
> Answer: Yes.
>
> * * * *
>
> Question: In fact, you and Mr. Glaze and Mr. Keeton prior to entering that store had planned to go into that store with the intention of committing a crime in that store?
>
> Answer: Yes.

Finally, when analyzing Peltier's motivation in making the statement, we note that in exchange for his admission to first-degree assault, Peltier was sentenced under the extended juvenile jurisdiction (EJJ) statute.[21]

---

18. Minn. R. Evid. 804(b)(5) provides:

 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

19. *Byers*, 570 N.W.2d at 492–93 (citing *State v. Stallings*, 478 N.W.2d 491, 495–96 (Minn.1991)).

20. *Id.* at 493 (quoting *United States v. Snyder*, 872 F.2d 1351, 1355–56 (7th Cir.1989)).

21. Under the EJJ statute, a juvenile court may retain jurisdiction over a child until the age of 21. Minn.Stat. § 260.181, subd. 4(b) (1996). The EJJ statute allows juvenile courts to impose upon a child a juvenile disposition and stay an adult sentence that could be executed later if the child fails to successfully complete the juvenile disposition. Minn.Stat. § 260.126 (1996).

His sentence was significantly more lenient than the appellant's 216 month sentence. As several factors indicate that the sentencing transcript was untrustworthy, we conclude that the admission of the transcript was in error.[22] Once more, we need not determine if this error, standing alone, was harmless beyond a reasonable doubt. As discussed in the following section, the numerous errors that occurred at trial can be considered cumulatively to determine if appellant was deprived of a fair trial.

### III.

 Having determined that the trial court erred, both in excluding appellant from the pretrial hearing and in admitting Glaze and Peltier's out-of-court statements, we must now decide if these errors were harmless beyond a reasonable doubt.[23] To determine if the errors were harmless, we must look to the basis on which the jury rested its verdict and determine what effect the errors had on that verdict.[24] If the verdict actually rendered was surely unattributable to the errors, the errors are harmless beyond a reasonable doubt.[25] Appellant is entitled to a new trial if the errors, when taken cumulatively, had the effect of denying appellant a fair trial.[26]

The trial court first erred in excluding appellant from the pretrial hearing that was held to determine if appellant threatened Glaze. The court then erred in admitting Glaze and Peltier's out-of-court statements pursuant to Minn. R. Evid. 804(b)(3). Finally, the court erred in admitting Peltier's sentencing transcript pursuant to Minn. R. Evid. 804(b)(5). The state did not present any physical or forensic evidence to incriminate appellant, relying in large part on the hearsay statements of Glaze and Peltier to support its case. In fact, the state conceded at oral argument that its entire case was based on the out-of-court statements by Glaze and Peltier. Therefore, we are not convinced that the jury would have convicted appellant without these statements.

These errors, taken cumulatively, deprived the appellant of his right to a fair trial. While the impact of any one of these errors, standing alone, may not have affected the verdict, we cannot conclude on this record that the cumulative effect of these errors was harmless beyond a reasonable doubt. Therefore, in the interests of justice we must reverse the conviction and remand for a new trial.

Reversed and remanded.

22. Again, because we hold that the statements were improperly admitted under Minn. R. Evid. 804(b)(5), we need not determine if the statements would satisfy the reliability and necessity requirements of the Sixth Amendment's confrontation clause. *See Byers*, 570 N.W.2d at 493.

23. *Jones*, 556 N.W.2d at 910.

24. *Id.* (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).

25. *Id.*

26. *State v. Williams*, 525 N.W.2d 538, 544 (Minn. 1994) (granting defendant a new trial when several errors, taken cumulatively, had the effect of depriving defendant of a fair trial).