STATE of Minnesota, Respondent,

v.

Terrell D. BOOKER, Appellant.

No. A08–0420.

Court of Appeals of Minnesota.

July 28, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Mike Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

JOHNSON, Judge.

A Hennepin County jury found Terrell D. Booker guilty of first-degree aggravat-ed robbery based on evidence that he and another man robbed a taxicab driver at gunpoint. On appeal, Booker argues that he was denied his right to be present when the district court determined whether his accomplice had a Fifth Amendment privilege to refuse to testify in Booker's trial. We conclude that Booker's presence was not required by Minn. R.Crim. P. 26.01, subd. 1(1). Booker also argues that the district court erred when it denied his motion to suppress the taxicab driver's pre-trial identification of Booker as one of the robbers. We conclude that the identification procedures were not impermissibly suggestive and that the district court did not abuse its discretion by denying Booker's motion to suppress. Therefore, we affirm.

## FACTS

At approximately 1:00 a.m. on May 17, 2007, O.M., a taxicab driver, was robbed at gunpoint by two young men in north Minneapolis. O.M. described one of the men as short, with a heavy build and twists in his hair, and the other man as taller and thinner. The case was assigned to Minneapolis Police Sergeant David Mattson, who called the taxi company to obtain the telephone number from which the call requesting the taxicab had been placed. He discovered that the telephone number was assigned to apartment 2 at the address in north Minneapolis to which O.M. had been dispatched.

On May 19, 2007, Sergeant Mattson went to apartment 2 to interview its resident, R.G., who was significantly older than the two men described by O.M. R.G. told Sergeant Mattson that two men came to his apartment on May 17, 2007; that they used his telephone; that he knew one man by the nickname "Mo Mo"; and that Mo Mo's uncle, who was known as "D," lived in a house down the street. R.G.

pointed to D's house from his apartment window. Sergeant Mattson then went to the house and spoke with D. Sergeant Mattson learned that Mo Mo was the nickname of D's nephew, J.R.

Sergeant Mattson returned to his office and used computer databases to gather information about J.R., including the names of persons known to associate with him. Sergeant Mattson created a photo array consisting of photographs of J.R. and his known associates. Sergeant Mattson took this photo array to R.G.'s apartment on May 22, 2007. R.G. identified two persons in the photo array: he identified J.R. as the person he knew as Mo Mo, and he identified Vantavian Duckworth as the other person who had come to his apartment on May 17, 2007, to use his telephone.

Sergeant Mattson returned to his office and created additional photo arrays. A second photo array consisted of a photograph of J.R. and photographs of persons similar in appearance to him, and a third photo array consisted of a photograph of Duckworth and photographs of persons similar in appearance to him. Both the second and third photo array contained six photographs, but neither included a photograph of Booker. To generate the second and third photo arrays, Sergeant Mattson used a computer that was programmed to search available photographs to find persons similar to J.R. and to Duckworth in characteristics such as age, race, and sex. On May 24, 2007, Sergeant Mattson showed the second and third photo arrays to O.M., who identified both J.R. and Duckworth.

Sergeant Mattson also showed O.M. a fourth photo array, which was intended to rule out R.G. and others as suspects. The fourth photo array included photographs of R.G., J.R., and others known to associate with J.R. Booker's photograph was included in the fourth photo array because he was known to associate with J.R. When O.M. saw Booker's photograph, he became excited and told Sergeant Mattson that he was "100 percent" sure that this was the man who had pointed a gun at him during the robbery. O.M. stated that his initial identification of J.R. in the second photo array was a mistake and that he changed his mind when he saw Booker's photograph in the fourth photo array.

During an interview on May 30, 2007, Duckworth stated to Sergeant Mattson that Booker was with him in the taxicab on the night of May 17, 2007. Duckworth also told Sergeant Mattson that Booker was the only person with him in the taxicab and that Booker spoke of a gun while in the taxicab. J.R. and Booker are brothers, and both resided at the address that the robbers had given to O.M. as their destination. Duckworth is their half-brother.

In May 2007, the state charged Booker with first-degree aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1 (2006). In November 2007, Booker moved to suppress the evidence of O.M.'s identification of him in the fourth photo array. The district court denied the motion.

Booker was tried over four days in November 2007. The state subpoenaed Duckworth, but Duckworth informed the prosecutor on the morning of the second day of trial that he was unwilling to testify. The state promptly moved to compel Duckworth to testify and to grant him use immunity under Minn.Stat. § 609.09, subd. 1 (2006). Duckworth previously had been found guilty of attempted aggravated robbery in a stipulated-facts trial by the same district court judge who was presiding over Booker's trial.

During a recess on the second day of Booker's trial, the district court conducted

a hearing for the limited purpose of determining whether Duckworth had a Fifth Amendment privilege against self-incrimination so as to justify his refusal to testify. The district court conducted that hearing at a time when Booker and his attorney were not present in the courtroom, but they were apprised of the matter when they returned. Booker's attorney then objected to the timeliness of the state's motion. The district court did not immediately rule on the motion to compel Duckworth's testimony but told Booker's attorney that he would be given an opportunity to be heard the following morning.

The following day, the district court conducted a second hearing for the purpose of resolving Booker's objections and to rule on the state's motion to compel Duckworth's testimony. Booker and his attorney were present for this hearing. The district court overruled Booker's objection and granted the state's motion, compelling Duckworth to testify and granting him use immunity.

Duckworth testified at trial that he and Booker were in the taxicab on the night of May 17, 2007. But Duckworth denied the presence of a gun, denied that a robbery had taken place, and denied that he obtained any money from O.M. Duckworth acknowledged, however, that he was charged with committing aggravated robbery in the incident and was found guilty of attempted aggravated robbery in a stipulated-facts court trial.

The jury found Booker guilty of first-degree aggravated robbery. The district court sentenced him to 78 months of imprisonment. Booker appeals.

## ISSUES

I. Did the district court err by conducting a hearing, in the absence of Booker and his attorney, to consider whether Booker's accomplice had a Fifth Amendment privilege against self-incrimination?

II. Did the district court err by admitting into evidence the taxicab driver's identification of Booker in a photo array?

## ANALYSIS

### I.

■■■■ A defendant has a constitutional right to be present at every critical stage of criminal proceedings. *State v. Grey,* 256 N.W.2d 74, 76 (Minn.1977). "Due process requires [a] defendant 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the [fullness] of his opportunity to defend against the charge.'" *Id.* (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). In addition, a criminal defendant has a right to be present "at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules." Minn. R.Crim. P. 26.03, subd. 1(1). The right conferred by this rule is considered to be broader than the right conferred by the federal constitution. *Ford v. State,* 690 N.W.2d 706, 712 (Minn.2005).

■■■ Booker's argument requires us to determine whether the hearing from which he was absent is one at which he had a right to be present under rule 26.03, subdivision 1(1). It is well established that the phrase "stage of the trial," as used in the rule, includes proceedings other than the presentation of evidence to a jury. For example, the rule applies to a pre-trial suppression hearing, *Grey,* 256 N.W.2d at 76–77; to a pre-trial hearing to determine whether a defendant threatened a witness, *State v. Keeton,* 589 N.W.2d 85, 87–88 (Minn.1998); to an in-chambers hearing to

determine the competency of a child witness, *State v. Thompson,* 430 N.W.2d 151, 152 (Minn.1988); and to a post-verdict hearing to investigate a bailiff's contact with jurors during deliberations, *State v. Erickson,* 597 N.W.2d 897, 903 (Minn. 1999). But there is no caselaw concerning whether rule 26.03, subdivision 1(1), applies to the proceedings at issue in this case, a hearing at which a district court considers whether a witness possesses a Fifth Amendment privilege against self-incrimination.

▪▪▪ The Fifth Amendment provides that no person "shall be compelled in any criminal case to be witness against himself." U.S. Const. amends. V, XIV; *see* Minn. Const. art. I, § 7. The Fifth Amendment applies to the states because it is incorporated into the Fourteenth Amendment. *State v. Clark,* 738 N.W.2d 316, 331 (Minn.2007). The privilege against self-incrimination allows a person to refuse to answer questions put to him in any other proceeding if his answers might expose him to a criminal charge or penalty. *Johnson v. Fabian,* 735 N.W.2d 295, 299 (Minn.2007). But the privilege is unavailable if the danger against which the privilege protects has been removed, such as when a defendant has been tried for the incident that is the subject of questioning, the appeal period has expired, and there is no risk of a perjury prosecution. *See Roth v. Commissioner of Corrections,* 759 N.W.2d 224, 229 (Minn.App.2008).

▪▪ If a person invokes the Fifth Amendment privilege against self-incrimination, the state may seek to compel his testimony by asking a district court to grant him use immunity for his testimony:

> In any criminal proceeding, ... if it appears a person may be entitled to refuse to answer a question or produce evidence of any other kind on the ground that the person may be incrimi-

nated thereby, and if the prosecuting attorney, in writing, requests the chief judge of the district or a judge of the court in which the proceeding is pending to order that person to answer the question or produce the evidence, the judge, after notice to the witness and hearing, shall so order if the judge finds that to do so would not be contrary to the public interest and would not be likely to expose the witness to prosecution in another state or in the federal courts.

> After complying, and if, but for this section, the witness would have been privileged to withhold the answer given or the evidence produced by the witness, no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case, . . . .

Minn.Stat. § 609.09 (2006).

In this case, the district court followed the procedures required by section 609.09, subdivision 1, in two steps. First, the district court considered the threshold question whether Duckworth possessed a Fifth Amendment privilege notwithstanding his conviction of attempted aggravating robbery based on the same incident for which Booker was being tried. Second, on the following day, the district court considered Booker's objections to the state's motion and ruled on the motion. Although the statute does not contemplate or require a two-step process, the statute also does not prohibit it.

For three reasons, we conclude that the first hearing conducted by the district court was not a "stage of the trial" at which Booker had a right to be present under rule 26.03, subdivision 1(1). First, there is nothing in the text of the rule indicating that the defendant's presence is

required at a hearing conducted pursuant to section 609.09, subdivision 1. The rule explicitly refers to four stages of a criminal case, two of which occur before trial (arraignment and entry of plea), one of which occurs after trial (sentencing), and one of which is the trial itself. When referring to the trial itself, the rule states that it "include[s] the impaneling of the jury and the return of the verdict." Minn. R.Crim. P. 26.03, subd. 1(1). But the text of the rule does not define "trial" broadly enough or specifically enough to include the particular type of hearing at issue here.

Second, section 609.09, subdivision 1, requires the state to give notice to the person whose testimony is to be compelled, but the statute conspicuously does not require the state to give notice to the defendant. *See State v. Rice,* 411 N.W.2d 260, 262 (Minn.App.1987). The absence of such a requirement suggests that the statutory procedure by which a person may be compelled to appear as a witness is not part of the trial at which the appearance is sought. Rather, the statutory procedure is ancillary to the putative witness's own criminal case.

Third, the caselaw reveals that hearings to determine whether a witness has a Fifth Amendment privilege against self-incrimination often occur before the commencement of a defendant's trial, outside the presence of the defendant and defense counsel. *See, e.g., Keeton,* 589 N.W.2d at 86 (noting that use-immunity hearing for accomplice under Minn.Stat. § 609.09 was held before trial, without defendant and his attorney, despite objections); *State v. Tatum,* 556 N.W.2d 541, 543 (Minn.1996) (noting that hearing under Minn.Stat. § 609.09 was held before district court judge who was to preside at witness's trial, not district court judge presiding over defendant-appellant's trial). Section 609.09, subdivision 1, was enacted into law in 1963.

*See* 1963 Minn. Laws ch. 763, art. 1, at 1191. We presume that the drafters of rule 26.03, subdivision 1(1), were aware of this practice in 1975 and saw no need to provide for a defendant's presence at a hearing conducted pursuant to section 609.09, subdivision 1. *See State v. Jackson,* 325 N.W.2d 819, 823 (Minn.1982) (presuming that drafters of Minn. R. Evid. 410 were aware of then-existing caselaw).

■ We also note that a defendant does not have standing to challenge a district court's determination that a witness has or does not have a Fifth Amendment privilege against self-incrimination. *See State v. Kingbird,* 412 N.W.2d 350, 354 (Minn.App.1987), *review denied* (Minn. Nov. 6, 1987); *Rice,* 411 N.W.2d at 262. Thus, a defendant's absence when the district court makes that determination has no impact on the defendant's opportunity to assert arguments helpful to his or her defense.

For these reasons, we conclude that the hearing conducted by the district court to determine whether Duckworth had a Fifth Amendment privilege against self-incrimination was not a "stage of the trial" at which Booker had a right to be present. Minn. R.Crim. P. 26.03, subd. 1(1).

■ Even if we were to conclude that the first hearing on the state's motion was a stage of Booker's trial, he would not be entitled to any relief because the error would be harmless. *See State v. Ware,* 498 N.W.2d 454, 457–58 (Minn.1993) (applying harmless-error analysis to denial of right protected by rule 26.03, subdivision 1(1)). To determine whether the denial of a defendant's right to be present was harmless, an appellate court examines the strength of the evidence, the substance of the district court's response, and what the defendant would have contributed to his defense if he had been present. *State v. Moon,* 717 N.W.2d 429, 442 (Minn.App.2006), *re-*

*view denied* (Minn. Sept. 19, 2006), *overruled on other grounds by State v. Reed,* 737 N.W.2d 572 (Minn.2007). Here, if Booker had been present for the first hearing, he would have urged the district court to rule that Duckworth retained a Fifth Amendment right against self-incrimination, which is how the district court ruled. Booker's appellate argument is based on the premise that Duckworth's testimony was harmful to his prospects of acquittal. A determination by the district court that Booker had a Fifth Amendment privilege was the only ruling at the first hearing that could have worked to Booker's benefit because it was the only ruling that might have caused Duckworth to not be called to the witness stand. Thus, Booker's absence from the first hearing had no harmful effect on the district court's subsequent ruling on the state's motion or on the jury's verdict.

## II.

In his pro se supplemental brief, Booker argues that the district court erred by admitting O.M.'s identification of Booker as one the robbers. The admission of pre-trial identification evidence violates a defendant's right to due process if the procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see also State v. Roan,* 532 N.W.2d 563, 572 (Minn.1995). Reviewing courts apply a two-part test to determine whether a pre-trial identification created a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 110, 97 S.Ct. 2243, 2251, 53 L.Ed.2d 140 (1977); *State v. Ostrem,* 535 N.W.2d 916, 921 (Minn.1995). The first question is whether the identification procedure was impermissibly suggestive, an inquiry that "turns on whether the defendant was un-

fairly singled out for identification." *Ostrem,* 535 N.W.2d at 921. If so, the second question is whether the identification is nonetheless reliable when considered as part of the totality of the circumstances. *Id.* A district court's ruling on the admissibility of identification evidence is subject to an abuse-of-discretion standard of review. *State v. Goar,* 295 N.W.2d 633, 634 (Minn.1980).

Booker first contends that O.M.'s pretrial identification was impermissibly suggestive on the ground that his photograph was a driver's license photograph while all other photographs in the fourth photo array were booking photographs. Booker is mistaken as to the relevant facts. The fourth photo array was composed entirely of driver's license photographs. Thus, Booker's contention is not supported by the evidence.

Booker next contends that the fourth photo array was unnecessarily suggestive because it was presented to O.M. as "a six-pack," with all photographs visible at the same time, rather than sequentially. This contention also is contrary to the record. Sergeant Mattson testified that all of the photo arrays were presented sequentially, and there was no evidence to the contrary.

Booker next contends that the fourth photo array was impermissibly suggestive because it was presented by the assigned investigator, Sergeant Mattson, rather than by a person not responsible for the investigation, as recommended by some law enforcement protocols. But Sergeant Mattson did not consider Booker to be a suspect until the presentation of the fourth photo array, when O.M. identified Booker as the gunman.

Booker last contends that Sergeant Mattson drew O.M.'s attention to Booker's photograph by placing it in the second position in the fourth photo array, after

the photograph of the much older R.G. Booker has not cited any authority for the proposition that it is impermissibly suggestive to place a suspect's photograph in the second position, and we are not aware of any such authority. In any event, as stated above, Sergeant Mattson did not consider Booker to be a suspect at the time he assembled the fourth photo array.

■ Finally, our review of the photographs in the fourth photo array refutes Booker's general argument that the array is impermissibly suggestive. Photographs displayed in a photo array must bear a reasonable physical similarity to the accused but need not be "exact clones." *State v. Yang,* 627 N.W.2d 666, 674 (Minn. App.2001) (quotation omitted), *review denied* (Minn. July 24, 2001). With the exception of R.G., the five other men in the fourth photo array were of similar age, race, and general appearance. Thus, the district court did not abuse its discretion by admitting into evidence O.M.'s identification of Booker as one of the robbers.

## DECISION

The district court did not err by conducting a hearing, in the absence of Booker and his attorney, to determine whether Booker's accomplice possessed a Fifth Amendment privilege against self-incrimination so as to justify his refusal to be a witness in Booker's trial.

The district court did not abuse its discretion by denying Booker's pre-trial motion to suppress evidence concerning the robbery victim's identification of Booker in a photo array.

**Affirmed.**