*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1358**

State of Minnesota,
Respondent,

vs.

Lamar George Houston, Jr.,
Appellant.

**Filed October 20, 2014
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-12-20391

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Ross, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

A woman told police that two men raped her in a North Minneapolis barbershop bathroom. The state charged Lamont Houston with third-degree criminal sexual conduct after the woman identified Houston as one of the rapists, and a jury found him guilty. Houston claims error in the district court's failure to give the jury a cautionary instruction about evidence of his prior convictions, in its decision to order his co-defendant to testify after the co-defendant claimed a constitutional right not to testify, and in its failure to correct prohibited statements that the prosecutor made during closing arguments. Because we conclude that the district court's instruction error did not prejudice Houston, that Houston lacks standing to assert his co-defendant's Fifth Amendment rights, and that the prosecutor's statements do not constitute misconduct, we affirm.

## FACTS

Hennepin County charged Lamont Houston with one count of third-degree criminal sexual conduct stemming from a December 2011 incident in a North Minneapolis barbershop. The jury at Houston's trial heard the following testimony describing the events.

L.O. testified that she was walking in downtown Minneapolis with another woman one morning when a car pulled up and the driver asked if L.O. wanted some type of job. L.O. pointed out Houston to the jury, indicating that he was the driver. L.O. got in Houston's car. Houston drove to a barbershop in North Minneapolis and told L.O. that he had to make a "pit stop."

They both went inside, and Houston spoke with the owner, James Spencer. The men told L.O. to wait in the bathroom so they could speak privately.

L.O. described for the jury how both men came into the bathroom successively and raped her. Houston was first. He came in the bathroom several minutes after L.O. had entered. He yelled at her, demanding that she take off her pants. She was afraid and complied. She said that Houston produced a condom, put it on, and penetrated her vaginally against her will. Houston left L.O. crying on the bathroom floor. Soon Spencer entered, and he also penetrated her vaginally against her will. He used the same kind of condom that Houston used. She said that both men threw their condom wrappers into the bathroom garbage can.

L.O. testified that she left the barbershop with Houston, shaking badly. He drove her to a drugstore parking lot and left her there. An employee found L.O. and called police. The police helped L.O. locate the barbershop, and she identified Spencer as one of her assailants. She later identified Houston from surveillance photos taken downtown near where she first encountered him. L.O. denied ever offering to engage in sex or even discussing sex with Houston.

The two officers who responded to the call testified, corroborating L.O.'s account. One officer described L.O. as being very emotional, "rocking back and forth" at first, and very nervous when they found the barbershop. The officers found two condom wrappers in the bathroom garbage can and one used condom floating in the toilet. They identified Spencer from L.O.'s description.

A nurse who examined L.O. testified that her examination revealed vaginal tearing and bleeding, which are both consistent with L.O.'s description of a sexual assault. And the state introduced forensic evidence establishing that the condom that police found in the barbershop bathroom contained both L.O.'s and Spencer's DNA.

The state called Spencer to testify. Spencer came to court from prison, having already been convicted for his role. Outside the jury's presence, Spencer implicitly invoked his Fifth Amendment right not to testify, stating that he wanted to wait until the attorney handling his appeal arrived. But the district court ordered him to testify, and Spencer obeyed the order. He told the jury that Houston came to his barbershop with a woman who matched L.O.'s description and that Houston asked if they could use the bathroom. He described, "It wouldn't take [a] rocket scientist to know that they were having sex in there." Spencer conceded that he had sex with L.O., but he denied hearing anyone yelling beforehand while Houston and L.O. were in the bathroom. He said that L.O. was not disheveled when he went in the bathroom and that she left voluntarily in Houston's car. He acknowledged that he had testified at his own trial that he thought Houston had paid L.O. for sex before they arrived.

Houston testified in his own defense. He said that he had been downtown looking for a friend when he noticed L.O. and her companion. According to Houston, L.O. offered to perform oral sex for $20. He accepted her offer and drove to find seclusion. He testified that they ended up in a parking lot outside Spencer's barbershop. He asserted that he removed a condom from its wrapper, put the wrapper in his pocket, and had begun putting the condom on when Spencer walked up. He said that Spencer also wanted to

4

engage in sex with L.O., so the three went into the barbershop. He testified that, before they entered, he discarded the condom in a garbage can. Also according to Houston's testimony, L.O. said that she wanted to engage in vaginal sex rather than oral sex. They then went inside the bathroom, where Houston threw away the previously discarded condom's wrapper and opened the wrapper of another condom. He told the jury that he then noticed that L.O. had "a smell . . . that wasn't right," and he therefore declined to have sex with her. He said he left the bathroom and gave the condom to Spencer. Houston acknowledged on direct examination that he had previously pleaded guilty to two unrelated felonies.

After Houston finished giving his account, the prosecutor played the jury a recording of an interview Houston gave to the investigating officer. In that interview, Houston initially denied any sexual behavior with L.O. He stated that he had taken a black woman to the barbershop but denied having had sex with anyone. Houston changed his story after the interviewing officer told him that Spencer had given a different account and that footage from a security camera put him at the scene where L.O. said he picked her up; Houston then said that he had picked up two white women. He claimed that L.O.'s companion gave him $10 to drive her to a drugstore, and he asserted that he and the two women had been accompanied by two of Houston's male friends. Houston had also claimed that he dropped off L.O.'s friend, leaving Houston, L.O., and Houston's two friends in the car. He said that the four of them went to Spencer's barbershop, where they all smoked marijuana. Houston said that he left the barbershop alone, leaving behind L.O.

5

and his two friends. He told the interviewing officer that he never had sex with L.O. or anyone else, and he suggested that someone must be trying to frame him.

After hearing the interview recording at trial, Houston attempted to explain the discrepancies between his interview account and his trial testimony. He testified that the investigator had not asked the questions that would have prompted him to give the details that he provided at trial. The prosecutor asked about his prior convictions, which Houston acknowledged were of second-degree sale of a controlled substance and felony domestic assault.

During his closing argument, the prosecutor urged the jury to consider Houston's two felony convictions when assessing his credibility, but the district court never gave a limiting instruction requiring the jury to so limit its consideration of the convictions.

The jury found Houston guilty. He appeals.

## DECISION

Houston rests his appeal on several arguments. Only his first argument is convincing, but it does not require reversal. He contends that the district court erred by failing to caution the jury not to improperly consider his prior convictions. He next faults the district court for forcing Spencer to testify after Spencer had asserted his Fifth Amendment privilege not to incriminate himself. He also argues that the prosecutor committed misconduct by making various prejudicial statements in his closing argument. Houston raises additional issues in a supplemental pro se brief.

6

# I

Houston's most compelling argument is his first, that the district court erred by failing to caution the jury to limit its use of his prior-conviction evidence. Because Houston did not request the limiting instruction, we review the district court's decision not to give the instruction for plain error. *State v. Irby*, 820 N.W.2d 30, 38 (Minn. App. 2012), *aff'd on other grounds*, 848 N.W.2d 515 (Minn. 2014). He can prevail on that standard only if he shows that an unobjected-to error occurred, that the error was plain, and that the error affected his substantial rights. *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If he meets these elements, we will reverse only if the error poses serious consequences to the "fairness and integrity of" the judicial proceedings. *Id.* at 742.

Houston argues that the district court should have instructed the jury that the evidence of his prior convictions was admissible only for the limited purpose of impeaching his credibility. Houston is correct. Evidence that a testifying defendant was convicted of a crime is admissible only to undermine his credibility and, unless the crime involved dishonesty, only if the probative value of the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a). The district court should instruct the jury of this limited purpose of the prior-conviction evidence even if neither party requests the limiting instruction. *Id.* 1989 comm. cmt.; *State v. Bissell*, 368 N.W.2d 281, 283 (Minn. 1985). And the court should instruct the jury accordingly as soon as the evidence is introduced. *Bissell*, 368 N.W.2d at 283. This is so even if the defendant rather than the state introduces the conviction evidence. *State v. Word*, 755 N.W.2d 776, 787 (Minn. App.

2008). The requirement for a prompt, sua sponte instruction is well settled, and the district court's failure to provide the instruction here therefore constitutes a plain error. The district court compounded that plain error by failing to issue a limiting instruction even at the end of the trial in its final instructions. *Cf. Bissell*, 368 N.W.2d at 283 (holding that the district court can mitigate the potential prejudice arising from its failure to give the limiting instruction promptly by giving the instruction during its final instructions).

Under these circumstances, Houston makes a nearly successful argument for reversal. We do not reverse on this ground, however, because the evidence of Houston's guilt is so overwhelming that any prejudicial effect by the district court's failure to properly instruct the jury is marginal by comparison. The jury heard L.O.'s account that Houston and Spencer raped her. It heard the corroborating testimony of the responding police and the examining nurse. The jury learned that the DNA evidence also corroborated L.O.'s account. In contrast to the consistent evidence of Houston's guilt, the jury also heard Houston's multiple irreconcilable accounts of his own behavior, including the recording of his nonsensical rendition in the police interview. In that interview, Houston first insisted to the officer that he had brought "a black girl" to the barbershop and that he "never picked up a white girl." But police then revealed to Houston that Spencer had already told them that the woman Houston brought to the barbershop was white (like L.O.), and not black, and that Spencer told them that Houston had sex with the woman in the bathroom. Houston's story then instantly transformed: "*Now* . . . I'm seeming to remember. I picked up two *white* girls, it was two *white* girls." Between

8

Houston's vacillating police interview and his trial testimony, the jury heard at least three fundamentally inconsistent and contradictory accounts that differed wildly on the most basic facts, including whether he had others in his car, whether he took *anyone* to the barbershop, whether he picked up one woman or two women, whether the woman he picked up was a stranger, whether he knew that the second woman's name was "Kathy," whether the woman he took to the barbershop was white or black, whether he first saw Spencer while in the car or in the barbershop, whether Houston ever went into the bathroom with the woman, whether he and the woman discussed engaging in a sex act, and whether he left the barbershop before Spencer emerged from the bathroom. Houston's varying stories stumbled down different paths to different conclusions; he was simply an incredible witness in the face of the very compelling evidence of his guilt. On this record it is impossible for us to suppose that the jury improperly convicted Houston because of his prior convictions rather than because of the evidence that he had sex with L.O. against her will.

This is a close case because of the importance of a contemporaneous limiting instruction. But the overwhelming evidence of Houston's guilt and the slight (and proper) reference to the evidence of Houston's prior convictions in the trial convinces us that the district court's plain error did not affect Houston's substantial rights.

## II

Houston next argues that the district court erred by requiring co-defendant Spencer to testify on the state's behalf after Spencer asserted his Fifth Amendment right not to

testify. Houston did not object at trial, so again we apply our plain-error review. *See Griller*, 583 N.W.2d at 740.

The Fifth Amendment protects a person from being compelled in a criminal case to testify against himself. U.S. Const. amend. V; Minn. Const. art. I, § 7. But although there are exceptions (for circumstances not present here), "[t]he general rule is that the fifth amendment privilege against self incrimination is personal to the witness." *State v. Rice*, 411 N.W.2d 260, 262 (Minn. App. 1987). We therefore reject Houston's argument.

Houston's citing of *State v. Morales*, 788 N.W.2d 737, 751 (Minn. 2010), does not convince us otherwise. In *Morales*, a prosecutor questioned Morales's co-defendant about answers he gave when he testified at his own trial, and the co-defendant repeatedly refused to answer in front of Morales's jury. 788 N.W.2d at 744. The supreme court deemed the co-defendant's testimony unfairly prejudicial to Morales, *id.* at 760, but the distinction from this case is obvious. The *Morales* court dealt with the prejudicial effect of the jury hearing the witness repeatedly invoking the Fifth Amendment and with the negative factual inferences that resulted. Morales did not rely on the Fifth Amendment rights of his co-defendant, as Houston attempts to do. Here, Spencer invoked his Fifth Amendment privilege outside the jury's presence. And he never refused to answer questions on the stand. The jury here was never exposed to the kind of repeated invocations of the Fifth Amendment and the negative inferences that unfairly prejudiced Morales.

And we will not infer from *Morales*—a case that analyzed the substance of a co-defendant's Fifth Amendment rights without invoking any jurisdictional questions—that

the supreme court was also holding that a defendant can assert the Fifth Amendment rights of another. *See Hagans v. Lavine*, 415 U.S. 528, 535 n.5, 94 S. Ct. 1372, 1377 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 9 (Minn. 2001) (noting that the court was "disinclined to reach a conclusion about the resolution of this issue from [caselaw] where the precise issue was not raised but arguably is implicit in our holding"). And jurisdiction is an issue that we may raise sua sponte if necessary. *Jarvis & Sons, Inc. v. Int'l Marine Underwriters*, 768 N.W.2d 365, 369 (Minn. App. 2009). It is clear to us that Houston lacks standing to raise Spencer's Fifth Amendment rights and that he has no constitutional right to be free of any incrimination from Spencer's testimony.

## III

Houston next contends that he did not receive a fair trial because the prosecutor committed misconduct during his closing argument. We apply plain-error review to unobjected-to alleged prosecutorial misconduct. *State v. Ramey*, 721 N.W.2d 294, 298–99 (Minn. 2006). We assess the closing argument as a whole when considering claimed instances of misconduct, not individual remarks removed from context. *State v. Johnson*, 616 N.W.2d 720, 728 (Minn. 2000). If we spot misconduct, we consider the record as a whole when determining whether the error denied the defendant's right to a fair trial. *State v. Booker*, 348 N.W.2d 753, 755 (Minn. 1984).

*Accountability*

Houston challenges the prosecutor's statement about holding criminals accountable. The prosecutor made a single reference to accountability:

> [E]verybody loses if people who are responsible for crimes are not held accountable, and what the State is asking you to do is to render a verdict that is fair and just, a verdict that is a confirmation of the truth, and that is that the defendant sexually assaulted [L.O.].

It is not inherently improper for a prosecutor to discuss accountability in his closing argument, and we will not reverse if the reference does not distract the jury from its true function of deciding whether the state has proved its case. *State v. Montjoy*, 366 N.W.2d 103, 109 (Minn. 1985). It is true that the jury's role is to decide the case based on the evidence, not to enforce the law or fashion a verdict designed to send moral messages to society. *See State v. Salitros*, 499 N.W.2d 815, 819 (Minn. 1993) (ordering new trial where prosecutor argued that the case "boiled down into one word, accountability"). The prosecutor's statement here falls short of the type of improper statements that merit reversal. The prosecutor made a general, brief reference to accountability. He then qualified the statement by urging the jury to reach a "fair and just" verdict, maintaining the focus on the jury's role as fact finder. The challenged statement in context was not error.

*Exercising Right to Trial*

Houston argues that the prosecutor improperly criticized him for exercising his right to a trial. Houston is correct that a prosecutor acts improperly by criticizing a defendant for exercising his constitutional right to a trial. *See State v. McNeil*, 658

N.W.2d 228, 235–36 (Minn. App. 2003) (holding it was improper for prosecutor to argue that the defendant's insistence on a trial victimized the victim of criminal sexual conduct a second time by forcing her to testify). Houston cites the following statement by the prosecutor as representing this sort of improper criticism: "It's unfortunate that not every individual who comes before the criminal justice system does not admit that they committed a crime, and that is what Mr. Houston did." This statement, ambiguous and confusingly worded, does seem to imply that it would have been better if Houston had simply admitted his guilt. But the statement falls short of the explicit argument in *McNeil* that the defendant, by insisting on a trial, was visiting new harm on his victim. The prosecutor here never expressly referred to or criticized Houston's insistence on a trial. Nor did he imply that Houston's decision had any adverse effects on L.O. This statement, which drew no objection, does not amount to plain, reversible error.

### *Defendant Lied*

Houston also argues that it was misconduct for the prosecutor to tell the jury that Houston lied. It is unprofessional for a prosecutor to express his personal beliefs about testimony. *Salitros*, 499 N.W.2d at 817. But arguing in closing that the defendant lied during his testimony is not necessarily misconduct. *Booker*, 348 N.W.2d at 755. Houston asks us to reverse based on the prosecutor's description of the inconsistencies between Houston's police-interview statements and his trial testimony:

> The defendant characterized it as incorrect statements . . . regarding the discrepancies in the statements that he gave to [police] . . . and . . . the testimony he gave [at trial]. Ladies and gentlemen, they weren't incorrect statements. They were lies. He blatantly lied in his statements.

13

This closing argument does not emphasize the prosecutor's personal belief that Houston lied to the jury. It instead argues that Houston lied, and the prosecutor supported the argument with facts presented to the jury—the apparently irreconcilable contradictions in Houston's accounts. The jury had the duty to determine whether Houston testified accurately, and the state had the right to argue from the facts that the witness testified using intentionally false statements of fact. We see no error.

### *Characterization of Presumption of Innocence*

Houston finally contends that the prosecutor mischaracterized the presumption of innocence. Misstating the presumption of innocence is prosecutorial misconduct. *Ramey*, 721 N.W.2d at 300. But arguing that the evidence overcomes the presumption of innocence and proves the defendant's guilt does not misstate the presumption. *State v. Young*, 710 N.W.2d 272, 280–81 (Minn. 2006). Houston highlights the prosecutor's statement that "the presumption of innocence is there, but as I stated earlier, it does not remain forever." Houston omits the prosecutor's preceding statement, which we think is necessary to keep the challenged statement in its true context: "But what is important to remember about that presumption of innocence is that it does not remain forever. The presumption of innocence remains with the defendant unless and until the defendant has been proven guilty beyond a reasonable doubt." This statement repeats nearly exactly the language from the sample jury instruction that the supreme court endorsed in *Young*. *See id.* at 281. The prosecutor did not misstate the presumption of innocence.

14

**IV**

Houston raises three arguments in his supplemental pro se brief. He first argues that he received ineffective assistance of counsel based on his attorney's failure to request a cautionary instruction after he referred, during cross-examination, to the fact that Spencer testified at his own trial. Houston's ineffective-assistance-of-counsel claim can succeed only if he proves that his attorney's conduct was objectively unreasonable and shows a reasonable probability that the outcome of his trial would have been different but for his attorney's error. *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013). Even if his trial counsel acted unreasonably in failing to request this instruction, the overwhelming weight of the evidence against Houston convinces us that the error did not affect the outcome of the trial.

He also argues that the district court judge, who had presided over Spencer's trial, erred by not recusing himself from Houston's trial. He bases this argument on *State v. Osterkamp*, No. A11-1103, 2012 WL 3262953 (Minn. App. Aug. 6, 2012), *review denied* (Minn. Oct. 16, 2012), a case in which we held that a district court judge should have recused himself from presiding over a defendant's bench trial because the judge had heard the defendant make incriminating admissions at a plea hearing on issues that were later contested at trial. *Id.* at *6. *Osterkamp* is not binding on us because it is not a published opinion, and its reasoning is inapposite where, as here, the challenged judge was not the fact-finder in the challenging defendant's trial. *See State v. Pero*, 590 N.W.2d 319, 326–27 (Minn. 1999) (affirming trial judge's decision not to recuse after refusing to

accept guilty plea and noting that the accused retained the right to have a jury serve as fact-finder).

Houston last contends that the district court erred by allowing Spencer to testify in prison attire. He is correct that "an incarcerated defendant or witness must not appear . . . in the distinctive attire of a prisoner" at trial. Minn. R. Crim. P. 26.03, subd. 2(b). But his argument is factually unsupported because, as he conceded through counsel at oral argument, the record does not establish that Spencer appeared in prison attire.

**Affirmed.**